HARVEY M. BACON, APELLANT, v. HAMILTON G. PARK, AGNES S. PARK, A. L. SIMONDI, JULIUS THOMPSON, FRANK W. INGERSOLL, CHARLES F. FISHER, AND MARTHA M. FISHER, RESPONDENTS.

SECURITIES — SALE BY TRUSTEE FOR HIS OWN BENEFIT — VOID, WHEN — RIGHTS OF PURCHASER. LEASE — COVENANT FOR TAXES — DELINQUENCY — FORFEITURE AND RE-ENTRY — NO NOTICE NECESSARY. FORFEITURE OF LEASE — WHEN EQUITY WILL NOT RELIEVE AGAINST.

1. *Securities — Sale by Trustee for His Own Benefit — Void, When — Rights of Purchaser.*

    When a party holds a note and a lease assigned as security for the note, as trustee, and after default, sells and transfers the note, and assigns the lease to his brother, plaintiff herein, but the evidence shows that the sale and transfer were for the benefit of the trustee, the entire transaction is void, and the transfer and assignment confer no right upon plaintiff.

2. *Lease — Covenant for Taxes — Delinquency — Forfeiture and Re-entry — No Notice Necessary.*

Where the due payment of taxes is one of the covenants of a lease, and the taxes are allowed to become delinquent by the lessee or his assigns, no demand for their payment by the lessor is necessary before declaring a forfeiture.

3. *Forfeiture of Lease — When Equity Will Not Relieve Against.*

Equity will not relieve against the forfeiture of a lease for breach of a covenant, when the breach has been culpable, long persisted in, and detrimental.

(Decided April 6, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. Ogden Hiles, *Judge.*

Action to set aside the forfeiture of a lease and seeking certain incidental relief.

From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Messrs. C. F. & F. C. Loofbourow* and *Messrs. Williams, Van Cott & Sutherland,* for appellant.

Under the circumstances (in this case) he (defendant Park) could not insist upon the forfeiture clause without full notice to all parties interested, that in future he would not tolerate delays, and that he intended again to come back to the contract, and in future to insist upon a strict compliance with it. *Thropp* v. *Field,* 26 N. J. Eq., 82; *Palmer* v. *Ford,* 70 Ill., 369.

We submit that the change in ownership of the note could not affect the security. The only effect it could possibly have would be to make it advisable for the creditor to foreclose by suit in court instead of by sale under the power contained in the note. This was a question in which no one but Thompson, Ingersoll, and Simondi could be interested. They were sued, and the matter went to

judgment in 1896. They voluntarily took the benefit of the credit for the amount realized on the sale of the lease. Their answer to a suit brought against them on the same note by F. W. Ross in the District Court for Salt Lake County shows that they had full knowledge of all matters which it is now claimed affected the question of the bona fides of the sale of the leasehold of J. H. Bacon, trustee. Having themselves elected to take and having taken the benefit of a credit of the amount realized from this sale, and this with full knowledge of all the facts surrounding it, they have ratified the sale, and can not now be heard to impugn it. The question, therefore, of the regularity or bona fides of this sale become immaterial. We submit further that Thompson, Ingersoll, and Simondi are the only parties who are interested in that question, and they having ratified the sale, Park can not be heard to question it. *Root* v. *Shields*, 1 Woolworth, 353, 354.

Equity will always relieve against a forfeiture when it can be done without working injustice, and when full compensation can be made. 1 Story Eq., Sec. 89 ; 2 Story Eq., Secs. 1313, 1318, 1921 ; 1 Pomeroy Eq., Secs. 433-453, 454 ; *Hulitt* v. *Fairbanks*, 40 O. St., 233 ; *Giles* v. *Austin*, 62 N. Y., 486 ; *Noyes* v. *Anderson*, 124 N. Y., 175; *Allen* v. *Dent*, 4 Lea, 676 (Tenn.); *Thropp* v. *Fields*, 26 N. J. Eq., 82; *Palmer* v. *Ford*, 70 Ill., 369; *Willard* v. *Benton*, 57 Vt., 286 ; *Smith* v. *Blaisdell*, 17 Vt., 199.

*S. McDowall, Esq.*, and *Messrs. Moyle, Zane & Costigan*, for respondents.

The appellant was unquestionably guilty of gross negligence, and a Court of Equity will not grant relief against laches not involving fraud or mistake. As this court

aptly said in *Bailey* v. *Stevens,* " Conscience, reasonable diligence, and good faith, and not neglect and laches, call forth the powers of a Court of Equity." *Bailey* v. *Stevens,* 11 Utah, 175.

Equity will never grant relief for non-payment of taxes or failure to insure or make repairs, or where the party seeking relief is not free from fault.    2 Story Eq., 1321, 2, 3, 4.

To support the defense of laches, it need not be shown that the defendant has been injured by the delay.    *Jones* v. *Perkins,* 76 Fed., 82.

BASKIN, J.

This is an action to set aside the forfeiture of a lease and seeking certain incidental relief.

The controlling facts in this case are as follows: The said Hamilton G. Park being the owner of certain real estate in Salt Lake City, on which the Manitou Hotel is now standing, he and his wife, Agnes S. Park, on the 1st day of April, 1892, leased the same to the defendants Simondi, Thompson, and Ingersoll for the period of twenty-four years.    Among other provisions of the lease it was stipulated that the lessees should pay as ground rent, monthly in advance, $187.50, keep the buildings, to be erected thereon by said lessees, insured, pay all taxes, rates, and assessments of any and all description on the property, and that the same with the improvements thereon should at the expiration of the lease be turned over to the lessor.    It was further covenanted that if the rent or any part thereof should not be paid, when due, and remain unpaid for twenty days thereafter, or if default should be made in any of the covenants of the lease, to be kept by the lessees or their executors, administrators, or assigns, that it should be lawful for the lessors to enter

upon said premises or any part thereof, either with or without legal proceedings and without giving notice to quit, and again to possess and enjoy said premises; that on the 1st day of July, 1893, said lessees assigned. said lease to James H. Bacon, as trustee of the American National Bank, to secure the payment of a certain promissory note, executed and delivered to said bank. There was a stipulation attached to said note, authorizing the legal holder or owner thereof, "on its maturity, or at any time thereafter, or before, in the event of said security depreciating in value, to sell, transfer, or assign the same, at public or private sale, at the discretion of said bank, or its president or cashier, without advertising the same or giving any notice." Default having been made in the payment of said note, at the request of the cashier of said bank, the said James H. Bacon, as trustee, on the 22d day of July, 1895, assigned said lease to his brother, Harvey M. Bacon. In the instrument it was recited that the said lease was sold to the said Harvey H. Bacon for the sum of five thousand dollars.

The foregoing facts are undisputed, and the plaintiff, Harvey M. Bacon, alleged them in his complaint.

The defendants, Simondi, Thompson, and Ingersoll, in their amended answer alleged that, "about the month of February, 1894, the said James H. Bacon became, and at all times thereafter continued to be and now is, the sole owner of said note so executed by these defendants; that the said pretended sale of said lease by said James H. Bacon, trustee, was so made to his said brother, Harvey M. Bacon, with the design, purpose, and understanding with his said brother that he, Harvey M. Bacon, should hold the same for the sole use and benefit of said James H. Bacon, and should thereafter convey the same to said

James H. Bacon. That said Harvey M. Bacon paid no money or other valuable consideration for said sale and deed of said lease; and that the said lease was so bid in the name of said Harvey M. Bacon for the purpose of concealing from these defendants the fact that the said James H. Bacon was the real purchaser thereof; that thereafter, as defendants are informed and believe, the said Harvey M. Bacon did, pursuant to the design, purpose, and understanding with his said brother, above set forth, convey the said lease to his said brother, James H. Bacon, who has claimed and now claims to own and hold the same.''

Like allegations as the foregoing were also made by Hamilton G. Park, and his wife, in their answer.

The following undisputed facts also appear: At the time said alleged sale and transfer of said lease was made, the taxes on the property leased had not been paid, and the property had been sold for the non-payment of the taxes for the years 1893 and 1894, and the time for redemption would expire in the month of January, 1896. The taxes for 1895 were delinquent. After said sale and transfer, neither plaintiff nor the original lessees paid said taxes, as provided in the lease. There had been default in the payment of the rent for the month of September and other months previous thereto. The rent for the month of September became due on the first day of said month, and having remained unpaid for twenty days thereafter, the defendant, Hamilton G. Park, on the 21st day of September, 1895, re-entered upon the leased premises, retained possession thereof, and declared said lease forfeited. He afterward redeemed the premises from the tax sales, and in doing so had to pay $2,768. He also had to pay the taxes for 1895, which amounted to $1,121.56. The plaintiff was aware of said defaults in

the payment of rent and taxes. He alleged in his complaint, as excuse for not paying the same, that he did not know the amount of the delinquency, and for the purpose of ascertaining the amount, applied to the defendant, Hamilton G. Park, for such information, and that the said Park informed him that he did not "then know the amount of the arrearages, but would ascertain the same in a few days and inform plaintiff thereof, and further assured plaintiff that he (said defendant) would do nothing and suffer nothing to be done to prejudice plaintiff's rights, and for some time thereafter said defendant Park from time to time promised and assured plaintiff that he (said defendant) would inform plaintiff of the amount of such arrearages and give plaintiff opportunity to pay the same, and agreed to accept same from plaintiff."

The plaintiff also alleged collusion between the said Park and his co-defendants, Simondi, Thompson, and Ingersoll to defraud him of his interest in said leased premises, and that the re-entry and declaration of forfeiture by the said Park were made in pursuance of such collusion.

The aforesaid allegations of plaintiff's complaint were put in issue by the answers of said defendants, and at the trial the court below found in favor of the defendants, upon said issues, and we think that the findings of the court, in that regard, are fully sustained by the evidence.

Upon the foregoing statement two questions are presented for consideration.

1. Was the alleged sale and transfer of said lease made bona fide, or for the use and benefit of the said James H. Bacon, the trustee, by whom the same was made?

2. Was the defendant, Hamilton G. Park, justified in re-entering the leased premises and declaring the lease thereof forfeited?

The evidence bearing on the first of these questions is as follows: James H. Bacon testified, "I received $5,000 from plaintiff. I don't remember whether he gave me his check or whether I took his note. If he gave me his check, I suppose it would be in his possession. * * * If I received a note, I would keep it and probably enter it in the bank books. If a note was taken, I should think it was entered on the bank books. If it was not, I can not tell why it was not. Harvey M. Bacon paid me five thousand dollars. I do not remember now just how it was paid. I think it was on the day of sale. The plaintiff never transferred this property back to me. It is still in his name, I guess. After this suit was commenced, the transaction was cleared up between him and me, and the property became mine from that time, and I returned to him whatever he had given for it."

On cross-examination, he further testified: "I became the owner of the Thompson, Ingersoll, and Simondi note from the American National Bank, but it was not indorsed to me, and I have been the owner from that time until the present. This lease was never transferred back to me from my brother. After this litigation was started, the question came up about this lease, and I took it back and released him. I think I had his note, but am not sure; whatever I had against him I gave up. I think at the time of this sale I took his note for the amount of the sale, and canceled it, and gave it back to him when I took the lease back. On the day of the sale I was the owner of the Thompson, Ingersoll, and Simondi note, although it stood in the name of Ross for collection."

The only statement made by the plaintiff on the subject of the consideration, was as follows: "I am of the opinion that I gave James H. Bacon a note for this lease, and that the note was afterward turned back to me."

As the consideration given for the assignment of said lease was in issue in the case, it is remarkable, if the transaction was a real one, that the parties could not give more definite evidence of the fact. The statements of the parties discredit the whole transaction, and if there was no other evidence on the subject, we would not hesitate to find that the sale and transfer was a mere subterfuge. But there is other evidence. C. J. Pence, an attorney, testified as follows: "I was attorney for some attaching creditors in the suits against the Bank of Salt Lake, and H. M. Bacon came to my office and asked whether I had considered the proposition that had been published by James H. Bacon in *The Tribune* a few days before, proposing that the assets of his bank should be put in the hands of Mr. Knox and some one else as trustees. I told him I had seen the proposition, but was not inclined to consider it, and that I did not think the assets were worth what was claimed for them, and that the assets included the item of the Manitou Hotel. I told him that that item, as I understood the matter, was owned by him and not by James H. Bacon. He said it had been bought in in his name at the sale of the lease; that James H. Bacon was the trustee and could not bid it in for himself, and he had bid it in in his name for that reason, and that it really belonged to James H. Bacon."

J. W. Edmunds testified as follows: "I have charge of the records of the Bank of Salt Lake, and am familiar with the note that Thompson, Ingersoll, and Simondi executed to the American National Bank for $19,345.70, dated July 3, 1893. I have examined the books of the bank and papers of the bank with reference to the entries relating to this note. The books show no credits at all upon the note. There is no entry of any kind, either credit or debit, to any general or individual account on

the books of the bank with reference to this note. The note appears on the books of the bank as an asset for its face value from the date of the note, July 1, 1893. I have not been able to discover any entry in the books or papers of the bank referring to a sale of the lease of the Manitou Hotel.''

We are satisfied that no consideration was paid by the plaintiff for the assignment of said lease to him, and that the sale and lease was made solely for the benefit of the said James H. Bacon. As he acted in the matter in the capacity of trustee, the transaction was void, and the assignment and transfer to the plaintiff conferred upon him no rights in the leased premises.

In regard to the second question : the character of the defaults in the payments of rents and taxes, for which re-entry was made, and a forfeiture of the lease declared, is an important element in the case.

It is contended by counsel for the plaintiff, that as no notice was given or a demand made for the rent and taxes, that the re-entry and forfeiture were unwarranted by law and in violation of the rights of the plaintiff. The answer to this is, 1. The alleged sale and transfer of the lease to him conferred no rights in the leased premises. 2. So far as the taxes were concerned no demand for them in any possible view of the case was required. They were not payable to Hamilton G. Park, but to the county treasurer.

In the case of *Davis* v. *Burrill et al.*, 10 Common Bench (70 Eng. Com. Law, 822), it is held that '' where a lessee covenants to pay rates and taxes, no demand is necessary to constitute a breach so as to entitle the lessor to avail himself of the proviso for re-entry.''

By the covenants of the lease of said premises, in case of default, the lessor was authorized to re-enter without

notice and forfeit the lease. It required no accounting to fix the amount of said taxes. The plaintiff by going to the treasurer's office could have ascertained the amount, and if he intended to keep the covenants of the lease, it was his duty to do so, and when ascertained, to pay the amount without applying to the defendant Park for such information. He knew that the premises had been sold for delinquent taxes, and that the time for redemption would soon expire, and that if the redemption was not made, that Hamilton Park's title to the premises would be defeated.

James H. Bacon represented his brother in most, if not all, of the conversations with Hamilton G. Park, upon the subject of the lease. Park, in his testimony, stated, "I met Harvey M. Bacon some time in October in James H. Bacon's office, the first time I ever knew him and the last time I saw him until I saw him here in court."

The intention of the plaintiff and his brother, James H. Bacon, regarding the taxes, is stated by the latter in his testimony, as follows: "I knew the property had been sold for taxes, and that my brother would have redeemed if Mr. Park had not done so before the time run out. He would have redeemed on the last day, but he was hoping all the time it would be adjusted."

The plaintiff was aware of the covenants in the lease relating to forfeiture. He knew that default had been made in the payment of taxes for several years (the deficit for taxes amounted to about $4,000), and that the premises had been sold for the non-payment of the same, and that the time to redeem had nearly expired, yet he did not intend to redeem until the last day. Such intention and such delay was a gross violation of the covenants of the lease. The evidence shows that Mr. Park was in straightened circumstances. His property was in danger of being

sacrificed for the non-payment of taxes. By forfeiting the lease he ascertained that he could raise the money necessary to redeem the property, by releasing the same. It would have been reckless on his part to let such an opportunity pass, and it was absurd for the plaintiff to expect that the lessor would not assert his right of forfeiture for the non-payment of taxes until the last day for redemption of the same from the tax sale.

Equity will not relieve against a forfeiture of a lease, where the breach of the covenants have been so culpable, long persisted in, and detrimental, as the evidence in this case shows the breaches to have been.

The decree of the court below sustaining the validity of the forfeiture of said lease is affirmed, with costs.

BARTCH, C. J., and MINER, J., concur.