# METROPOLITAN LAND COMPANY, Appellant, v. JAMES H. MANNING, Respondent.

### Kansas City Court of Appeals, January 5, 1903.

1. **Injunction: STATUTE: TRESPASS: SOLVENCY.** Though a trespasser be solvent, yet when his trespasses are harassing, continuous and involve a multiplicity of suits, damages are inadequate and under the statute injunction will lie.

2. **Landlord and Tenant: FORFEITURE OF LEASE: NOTICE.** Where a lease provides for a forfeiture at the option of the lessor on a certain contingency, the act of taking possession is an exercise of the option and is all the notice required, the lease being silent as to notice.

3. ———: ASSIGNMENT OF LEASE: WARRANTY DEED. The lessor's warranty deed conveys his lease with all his rights and privileges to the grantee.

4. ———: LEASE: FORFEITURE: INSURANCE: PERFORMANCE PREVENTED. Where a lease provides for forfeiture on the failure to maintain the stipulated insurance, whether the forfeiture would occur where the failure to maintain the insurance was caused by the lessor, is doubted; and whether the lessor's conduct rendered performance impossible is left undecided.

5. ———: ———: ———: UNPAID TAXES: "PROMPTLY." A covenant in a lease that taxes be paid promptly when the same become due and payable, requires the covenantor to make no delay in the payment of the taxes, but to adjust them at once when due.

6. ——: ——: ——: ——: RENT: DEMAND. A covenant in a lease for the payment of taxes does not require demand for such payment before a forfeiture may be had, since such taxes are not rent to require demand but are wholly matters between the tenant and the proper officer.

7. ——: ——: ——: ——: RELIEF. Where a tenant covenants promptly to pay the taxes and the landlord enters for failure to perform the covenant, he can not then pay the taxes and have relief against the forfeiture; and *a fortiori* where such payment was not made until the contest was approaching an end and the lessor's entry and forfeiture with its rights had become perfected. (Cases of equitable relief against forfeiture distinguished.)

8. ——: ——: ——: ENTRY: POSSESSION: TRESPASS. Trespass is primarily an offense against one's possession, and the mere forfeiture of a lease by entry is not sufficient possession in itself to maintain a trespass; but on the facts in the record the lessor's possession is found sufficient.

9. ——: ——: ——: ——: INJUNCTION. The doctrine that equity never declares a forfeiture is not applicable where a landlord has already entered and enforced a forfeiture and is seeking by injunction to prevent trespass upon his possession.

10. ——: ——: CONSIDERATION: CRIMINAL PROSECUTION. Where the consideration for the ratification and confirmation of a lease is an agreement to abstain from or dismiss a prosecution, it is void.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ward & Hadley* for appellant.

(1) From and after November 9, 1901, the date of forfeiture of defendant's lease, defendant had no right in or to the possession of the ball park, and from and after the 12th day of November, 1901, defendant, his agents and servants, were trespassers therein. Callaway v. Henderson, 130 Mo. 77; Webb v. Ins. Co., 14 Mo. 3; Patton v. Bond, 50 Ia. 508; 18 Am. and Eng. Ency. of Law (2 Ed.), p. 371; Guffy v. Huskill, 34 W. Va. 49; 18 Am. and Eng. Ency. of Law (2 Ed.),

p. 342.  (2)  Defendant's agents and servants were trespassers after November 12, 1901.  Ragan v. Railroad, 144 Mo. 623; Taylor on Landlord and Tenant, sec. 774.  (3)  Injunction will lie in this case.  R. S. 1899, sec. 3649; Webster v. Cook, 23 Kan. 637; Harber v. Evans, 101 Mo. 667; Jones v. Williams, 139 Mo. 37.  (4)  Defendant's inability to get insurance after August 15, 1901, the date of cancellation of policies of insurance, did not excuse defendant in performance of his insurance covenant.  Whittemore v. Sills, 76 Mo. App. 252; Harrison v. Railroad, 74 Mo. 371.  (5)  Defendant's failure to comply with his covenant to promptly pay the State and county taxes when due and payable, furnished the owner of the ball park ample ground, on November 9, 1901, for forfeiture of his lease.  (6)  Payment of state and county taxes for 1901 by defendant on the 12th day of November, 1901, was too late to avail defendant anything; for his lease had already seen forfeited by good and sufficient notice.  Illingworth v. Miltenberger, 11 Mo. 61.  (7)  The writing signed by Arnold in Justice Pursley's court on the night of November 16, 1901, whereby Arnold agreed that defendant should have possession of the ball park until December 1, 1901, was unauthorized by plaintiff, without consideration, contrary to public policy and absolutely void.  Sumner v. Summers, 54 Mo. 346; Baker v. Farris, 61 Mo. 390; McCoy v. Green, 83 Mo. 626.

*Evans & Finley* for respondent.

(1)  Arnold's attempted entry into the premises made at 6 o'clock a. m., while defendant's watchman was at breakfast, was unlawful, and no right can be based thereon.  It was not necessary that defendant have some one always in the park in order to hold possession.  Krevet v. Meyer, 24 Mo. 107; Van Eman v. Walker, 47 Mo. 169; Harris v. Turner, 46 Mo. 438;

Meriwether v. Howe, 48 Mo. App. 148. (2) Mr. Manning faithfully kept all the conditions of his lease and no ground for forfeiture ever existed. Forfeiture clauses are not favored either in law or equity, and their effect will be limited by a strict construction. 18 Am. and Eng. Ency. Law (2 Ed.), 371, and cases cited; Messersmith v. Messersmith, 22 Mo. 369; Lasser v. Baldridge, 32 Mo. App. 362; McCollum v. Ins. Co., 61 Mo. App. 352; Bispham's Principles of Equity (5 Ed.), 268; McKim v. Whitehall Co., 2 Md. Ch. 510; White v. Railroad, 36 Mich. 356; Gordon v. Lowell, 21 Me. 251; Fitzhugh v. Maxwell, 34 Mich. 138; Beecher v. Beecher, 43 Conn. 556; Shade v. Oldroyd, 39 Kan. 313; Elevator Co. v. Railway, 3 McCrary 463; Meni v. Rathbone, 21 Ind. 454; Eichenlaub v. Neil, 3 Ohio Dec. 365; Bowman v. Foot, 29 Conn. 341; Jackson v. Harrison, 17 Johns. (N. Y.) 66. (3) The lessor can not enforce a forfeiture after he has conveyed away his reversion though the cause of forfeiture occurred before the conveyance. Van Ransselaer v. Hayes, 5 Den. 317; 18 Am. and Eng. Ency. of Law (2 Ed.), p. 373; Woods, Landlord and Tenant, sec. 221, p. 452; Hendricks v. Dixon, 69 Mo. App. 197; Allen v. Kennedy, 91 Mo. 324. (4) The covenant to pay taxes "when due and payable" means that the taxes shall be paid before penalties are incurred for non-payment and before they become a burden on the lessor, and the breach of this covenant occurs when the taxes are paid by the covenantee and not before. Hendricks v. Dixon, 69 Mo. App. 197; Woods Landlord and Tenant, p. 961 et seq.; Whitman v. Nicoll, 38 N. Y. Sup. Ct. 528; Goode v. Ruchle, 23 Mich. 30. (5) The testimony is also uncontradicted that the insurance was cancelled and could not thereafter be procured, or renewed, because the fact of the sale of the property by Holmes and the purpose of the purchasers to tear down and remove the improvements, had been made public, and the property was, for those reasons, no longer insurable.

Clark v. Brookfield, 81 Mo. 509; Seamon v. Paddock, 55 Mo. App. 296; McCulloch v. Baker, 47 Mo. 401; Baker v. Railroad, 19 Mo. App. 321; Fitzgerald v. Hayward, 50 Mo. 516; Park v. Kitchen, 1 Mo. App. 357; Doyle v. Turpin, 57 Mo. App. 84; Tiedeman on Real Property, sec. 274; 2 Washburn on Real Property (4 Ed.), 447 and 448. (6) Equity never lends its aid to enforce a forfeiture. Messersmith v. Messersmith, 22 Mo. 369; Towne v. Bowers, 81 Mo. 491. On the other hand, it will always relieve against forfeiture when compensation in damages can be computed with certainty. Messersmith v. Messersmith, supra; Giles v. Austin, 62 N. Y. 486; Rector v. Higgins, 48 N. Y. 533; Crawford v. Waters, 46 How. (N. Y.) 210; Carroll v. Ins. Co., 10 Abb. N. S. (N. Y.) 166; Bleeker v. Smith, 13 Wend. (N. Y.) 530; Jackson v. Brownson, 7 Johns. (N. Y. 9) 227; Ireland v. Nichols, 46 N. Y. 413; Nagle v. League, 70 Mo. App. 487; Thresher Co. v. Pierce, 74 Mo. App. 676; Association v. Trust Co., 73 Mo. App. 161; Jordan v. Mfg. Co., 77 Mo. App. 572; Williams v. Realty Co., 153 Mo. 487. (7) Injunction will not lie in this case. Janney v. Spedden, 38 Mo. 402; Echelkamp v. Schrader, 45 Mo. 505; Smith v. Jamison, 91 Mo. 13; Bodwell v. Crawford, 26 Kan. 292; Lacassagne v. Chapius, 144 U. S. 119 (36 L. Ed. 368); Babb v. Woodward, 42 Mo. 488; Mooney v. Kennett, 19 Mo. 551; Weigel v. Walsh, 45 Mo. 560; Railway v. Mattox, 92 Mo. 479; Mining Co. v. Mining Co., 5 Mo. App. 525; High on Injunctions (3 Ed.), sec. 434; Bodwell v. Crawford, 26 Kan. 292; Johnson v. Glenn, 40 Md. 200. (8) The lease and possession was ratified by Arnold.

ELLISON, J.—This proceeding is an injunction to prevent the continuation of trespasses on real estate. A temporary writ was issued which, at the hearing in the trial court, was dissolved. A receiver was appointed to take charge of the property and collect

amounts due on games to be played on the day succeeding the issuing of the writ.

There is wide disagreement between the parties as to many of the facts in the case which tends somewhat to confuse an effort to ascertain the merits of the questions at issue. There are, however, certain matters going far towards a settlement of the controversy which are indisputable. These are that James T. Holmes was owner of the property, and that in December, 1900, he leased it to defendant for a term of five years from January 1, 1901, who used it principally as baseball grounds and occasionally for playing games of football. The lease provided that defendant should ''have all improvements on said property insured during the term of the lease in the sum of at least four thousand dollars.'' And that he would ''pay all general taxes, state, county and city, which may be assessed against said premises during or for the said term of five years which the lease has to run, promptly when the same becomes due and payable.'' The lease further provided that if these covenants were not kept it should be ''forfeited at the option'' of Holmes.

Holmes by a general warranty deed dated and acknowledged August 10, 1901, sold said property to the Western Cattle Brokerage Company; and that company, on November 9, 1901, sold it to the Metropolitan, this plaintiff. That James H. Arnold was the president and active manager of both these corporations. That on November 9, 1901, Holmes had served on defendant a written notice of forfeiture (dated November 4, 1901) on account of his having failed to pay the taxes for 1901, and to keep up said insurance. Each of the companies aforesaid had knowledge of defendant's lease, and while the deeds are silent on that subject, they, in point of fact, bought subject to the lease.

From this point on the evidence discloses that active hostilities began between the parties; and while much of the evidence is undisputed, its effects on the rights of the parties is vigorously contested. It seems that Manning, being absent, had given Dr. Shively the privilege of practicing for games about October 1, 1901. After Holmes's sale to the Western Cattle Brokerage Company in August, that company, through its employees and servants, entered upon the premises and looked after them generally, and this was continued along in the same way without objection or resistance from any one after this plaintiff purchased. The ball grounds were fenced and had different openings or gates. Inside was an amphitheatre, such as is usually found on such grounds, as well as a house known as a "clubhouse." It seems that at the time of the purchase from Holmes by the Western Cattle Brokerage Company, the premises were not closely guarded and persons could go in and out at pleasure except when a game was to be played. The evidence as to the time that possession was taken by the Western Cattle Brokerage Company and when this plaintiff succeeded to that possession, is somewhat confusing. But it seems certain that on November 1 the former company had the gates and doors locked and maintained and continued the maintenance of a watchman, and that on November 9, this was continued by this plaintiff; the same watchman being continued, his name being changed to the pay rolls of this plaintiff. On the latter date this plaintiff let the grounds for a game of football and received the rental therefor.

The grounds had been in the immediate charge of witness Meyers who lived in the clubhouse as defendant's employee, and who had so lived for five years, defendant having had the grounds under a former lease. He had charge of defendant's property connected and used with the grounds. He removed from the premises on October 7, taking with him then, and

shortly afterwards, defendant's property. He gave as a reason for abandoning the premises that they had "changed hands."

The evidence brought out in behalf of defendant tended to show that he had been in Washington City during the baseball season of 1901. That for that reason he had sublet the grounds to one Tebeau, and that after the close of the season he (as above stated) had given Dr. Shively permission to use the ground for practice purposes for a football team, with the understanding that he was to be paid twenty per cent of the gate receipts for any game played. It was shown that Shively, too, had a watchman on the ground a great part of the time. That Shively had ordered plaintiff's workmen to desist tearing down a stone wall on the north side of the grounds. That he was in and out of the grounds at different times in the month of October and up to the ninth of November when plaintiff took exclusive possession by locking the doors and gates. That on the twelfth of November he found no one in the grounds when he went in during the temporary absence of plaintiff's watchman and endeavored to hold it to himself. He seems to have held possession in this way until the sixteenth, when plaintiff's men again took possession. Defendant's agents thereupon had plaintiff's servants, including Arnold, the president, arrested on a charge of disturbing the peace. While under arrest Arnold signed a paper hereinafter set out acknowledging defendant's right to the premises, whereupon he was discharged and the proceedings against him were thereupon stopped. Plaintiff thereupon, on November 27, began the present proceeding to enjoin defendant from trespassing on the property.

Without going further into detail of evidence, certain matters may be stated as established facts. In stating these things we will consider the acts of the Western Cattle Brokerage Company and the plaintiff company as one and the same as far as this plaintiff's

rights are concerned. We should do this for the reason, that the plaintiff succeeded to all the rights of the Western Brokerage Company by reason of the deed of the latter company to plaintiff. It therefore may be said that whatever may have been the status of affairs prior to November 1, on that day exclusive possession was taken by plaintiff when its agents actually occupied the grounds and nailed the gates and locked the doors leading thereto. It is conceded that even though this was not done on the first, it was done on the ninth, and that plaintiff so remained in exclusive possession until the twelfth, when during a temporary absence of plaintiff's watchman, defendant again entered and remained in possession until the sixteenth, when plaintiff's servants again entered and were shortly thereafter arrested, charged with disturbing the peace, on warrants taken out by defendant's agents. The plaintiff's president, Arnold, was afterwards discharged and the proceedings against him dismissed, as has been already stated. The further fact is conceded that on November 4, Holmes, at plaintiff's request, made out a notice of forfeiture for non-payment of rent and for failure to keep up insurance; and that this notice was served on defendant personally in Washington City on the ninth.

I. The first question is, whether injunction is a proper remedy? We think that it is. Our statute provides: "The remedy by writ of injunction or prohibition shall exist in all cases where a cloud would be put on the title of real estate being sold under an execution against a person, partnership or corporation having no interest in such real estate subject to the execution at the time of sale, or an irreparable injury to real or personal property is threatened, and to prevent the doing of any legal wrong whatever, whenever in the opinion of the court an adequate remedy can not be afforded by an action for damages." Sec. 3649, R. S. 1899.

If the lease was rightfully forfeited then defendants had no right to interfere with plaintiff's possession. And his keeping men on the watch whereby they might at any time enter the premises and exclude plaintiff, and the conceded fact that such men were claiming a right to enter and did actually enter, from time to time, and finally had plaintiff's servants arrested on the premises, were such acts of continuous trespass as justifies the preventive aid of an injunction. Harbor v. Evans, 101 Mo. 667; Jones v. Williams, 139 Mo. 37; Towne v. Bowers, 81 Mo. 496; Bank v. Kercheval, 65 Mo. 688; 3 Pomeroy's Eq. Jur., sec. 1357. And so it may safely be said to be the law that though the trespasser is solvent, yet when his trespasses are harassing and continuous and will involve a multiplicity of suits for redress, damages are not an adequate remedy for such continued harassment and annoyance in the enjoyment of real estate.

2. Much has been said about the written notice of forfeiture of the lease and the time it was served on defendant in Washington City. But in point of fact a written notice was not necessary. The lease does not require such notice. It provides that it may be forfeited at the option of Holmes, the lessor. The act of taking possession was an exercise of the option and was all the notice required. In view of the evidence in this case, it is quite unreasonable to say a written notice should be given when it was not called for by the paper itself. Clark v. Brookfield, 81 Mo. 503; Messersmith v. Messersmith, 22 Mo. 369.

3. Could this option be exercised by the grantees of the lessor? In this connection we may remark that in the progress of the trial the court made a statement, in passing on an objection to evidence, which necessarily led to the judgment afterwards entered for defendant. That was, that since there was no assignment of the lease by Holmes to the Western Cattle Brokerage

Company or to plaintiff, the latter did not acquire any rights under the lease. This we conceive to be serious error. It is true there was no formal assignment of the lease, but when Holmes made his general warranty deed to the Western Cattle Brokerage Company and that company made its deed to this plaintiff, the lease with all the lessor's rights and privileges were conveyed or assigned to plaintiff. The lease was assigned by virtue of the terms of the deed. Allen v. Kennedy, 91 Mo. 324; Hendrix v. Dickson, 69 Mo. App. 197; Woods L. and T., sec. 221.

4. The next question necessary to consider is, was there grounds of forfeiture? The covenant was to keep the premises insured in a sum of not less than $4,000. Insurance was taken out in that sum, but was afterwards cancelled and was not again renewed by defendant. He offers as an excuse for such non-performance that it was plaintiff's act in publicly proclaiming that the buildings and improvements were to be torn down and not rebuilt which caused the cancellation and which prevented him, after repeated efforts, from renewing. Plaintiff's answer to this excuse is that defendant was bound by positive contract to insure and that he should have provided against the contingency which happened, and not having done so, he must abide by the terms specified. We are of the opinion that the rule of law invoked by plaintiff finds no application to a case where the party to the contract who is seeking to enforce it was, himself, the cause of the breach of which he complains. Whether, in point of fact, plaintiff's conduct was such as rendered performance by defendant impossible, we need not decide, since, in our opinion, the clause of forfeiture with respect to the non-payment of taxes will dispose of the case.

5. The provision in respect to the taxes was that defendant would pay all general taxes "promptly when the same became due and payable." The state and

Metropolitan Land Co. v. Manning.

county taxes became due and payable on September 1, 1901, and they were not paid until November 12 thereafter. Was this a "prompt" payment when they became due and payable?" We think it was not. All the words of a contract, as of a statute, should be allowed some office to perform if it can be reasonably done. The word "promptly" was meant to emphasize that the taxes were to be paid as soon as they became due. It was said in Butler v. Manny, 52 Mo. 497, 506, that where, in a lease, no time was fixed for the payment of taxes, it would be presumed "that they will be paid as they become due." Whether by that expression the Supreme Court meant within a reasonable time, does not appear. But certain it is, that the word "promptly," as used by these parties, means something more definite and covers a shorter time than a reasonable time. Words denoting that quick action was intended have received judicial interpretation. Thus, an English statute required that "immediately after" certain trials, application should be made for a certificate, etc. On the conclusion of a trial the judge adjourned court to his lodgings and there, within fifteen minutes, granted the certificate. This was held to be sufficient. The statute was interpreted with a little more breadth than the literal meaning of the word "immediately" would indicate, for its literal meaning would be, instantaneously, which would be perhaps impossible; but yet it is clearly seen from the opinion of the judges that there must not be delay. Thompson v. Gibson, 8 M. & W. 281. And so in Streeter v. Streeter, 43 Ill. 165, the word "immediately" was held not to be enlarged into "practicably" in the performance of a contract.

In Duncan v. Topham, 8 M. G. & S. 225, the plaintiff sued the defendant for the price of a shipment of goods, declaring in his declaration that they were to be delivered "within a reasonable time." The proof showed the contract to be that they were to be shipped

"directly." The court held that the declaration did not describe the contract. That "within a reasonable time" was a much more protracted period than was meant by the word "directly." In Tobias v. Lissberger, 105 N. Y. 404, the plaintiff sold to defendant one hundred tons of old iron "for prompt shipment," and the court held that the words implied "expedition and admit of less delay than would be permitted under a covenant to act merely within a reasonable time." That the word "prompt" would not only admit of less delay than a reasonable time, but that it was something more and required more celerity of action than the word "directly."

We are, therefore, satisfied that defendant's covenant to pay the taxes "promptly when the same become due and payable" can not be extended into, or interpreted to mean, within a reasonable time after due. While we will not pretend to say what limit of time the word "promptly" will include in reference to making a payment; yet we do not understand it to include the, perhaps, impossible, or the unreasonable, as that the payment should be made the instant it becomes payable. But while that is true, it ought not, on the other hand, to be contended that such word would permit of a delay stretching out into weeks, as in this case. The word was introduced into the contract so as to make it obligatory on the part of the covenantor to make no delay in payment of the taxes after they were payable, and that he should proceed to adjust them at once.

6. But it is insisted that there could be no forfeiture for failure to pay taxes until there had been a demand to pay them. The ground upon which such insistence is based is that when the lessee covenants to pay taxes, such taxes are a part of the rent and that under the law there can be no forfeiture for non-payment of rent before demand therefor. Leaving out of view the question whether a demand was not useless and unnecessary by reason of defendant's position

from the beginning, that he was not in default as to taxes and that he had until January first, the day penalties accrued, in which to pay, we have concluded that as a legal proposition, no demand for the payment of taxes is a necessary prerequisite to a forfeiture.

The law is that there must be a demand for the payment of rent in order to work a forfeiture. This is the common law and it carries with it certain strict formalities wholly inapplicable to a demand for the payment of taxes, and it demonstrates that a demand for the payment of taxes is wholly impracticable within the rules governing a demand for the payment of rent, as such. The demand for rent must be upon the premises and on the last day upon which it is payable, and for the precise sum due, and it must be a continuous demand till sunset of that day. 1 Woodfall's Lan. and Ten., 321; 2 Woods' Lan. and Ten., 1035-1041; 2 Taylor's Lan. and Ten., sec. 493. The demand for rent presupposes that it is something which the landlord may receive and for which he may acquit the tenant. It is money, or other thing, which the landlord has a right to receive; conditions inapplicable to taxes. The question has been before the courts and decided as here indicated. The case of Davis v. Burrell, 10 Common Bench 821, is quite similar to the one before us. The plaintiff was defendant's tenant of a public house, yard, stables and coach house, under a lease which contained covenants that the lessee would pay rent, rates and taxes. During the temporary absence of the plaintiff's servant, who had charge of the premises, defendant entered for breach of the covenant to pay rates, and put locks on the gates and outer doors. Plaintiff thereupon came to the premises accompanied by several men and attempted to force their way in; whereupon the defendant had plaintiff arrested and carried to the police station charged with willfully breaking locks, etc. It was held that the landlord rightfully entered and was in rightful possession and

that no demand for payment of the rates was' necessary. JERVIS, Ch. J., said: ''If the rates were due and were not paid, the defendant Burrell was lawfully in possession of the premises at the time the plaintiff made the forcible attempt to get in. When a rate is duly made and published, it is the duty of the parties assessed to seek out the collector and pay it. Here the plaintiff has entered into a covenant to pay rates, and he has broken that covenant.'' WILLIAMS, J., said: ''The plaintiff was bound by his covenant to pay the rates; there was no necessity for a personal demand.'' TALFOURD, J., said: ''There was an absolute covenant to pay all rates and taxes; not conditional on their being lawfully demanded.''

A demand was said to be necessary in Jackson v. Harrison, 17 Johns. 66; but subsequently the error of that statement was pointed out, where it was held, in a well-considered case, that no demand was necessary. Garner v. Hannah, 6 Duer. 262. And such was the conclusion of the Supreme Court of Minnesota after full examination into the reason of the matter. Byrane v. Rogers, 8 Minn. 281. And a like holding was had in Bacon v. Hamilton, 19 Utah 253.

In Tate v. Crowson, 6 Iredell 65, the distinction is made between covenants for a breach of which a forfeiture may be had without demand and those where there must be a demand. It is there said that where the act involves in any way the agency of the landlord, there must be a demand by him. But in those instances where there is no agency or act of the landlord connected with it, such as a covenant not to assign or to insure, there need be no demand, for the matter is, in such cases, wholly between the tenant and third persons. This statement of the law is directly applicable to a covenant by the tenant to pay taxes. In such case there is nothing the landlord could do. He has no agency or connection with such payment. He can neither enforce nor receive payment of the taxes. It

is a matter wholly between the tenant and the proper officer.

7. Defendant now, for the first time, insists that the covenant to pay taxes was no more than a covenant to pay money, and that since he had subsequently paid the taxes he was entitled to relief against the forfeiture. He cites Messersmith v. Messersmith, 22 Mo. 369; Giles v. Austin, 62 N. Y. 486, and Noyes v. Anderson, 124 N. Y. 175, as sustaining him. The first of these cases was where the plaintiff sought, by a bill in equity, to forfeit defendant's title to land and to cancel the deed thereto for breach of a covenant therein that "the grantee should provide for the grantor a good· and sufficient maintenance during his natural life." The grantee had died without making a provision for the grantor's support. But the heirs had offered to supply the omission by making ample provision. The court after saying that "equity never lends its aid to enforce a forfeiture" and that the bill would be dismissed, proceeded to state the law applicable to any future proceedings which might be instituted, and held that where the breach was not willful and was without fault, the heirs had a remedy by answer to plaintiff's suit in ejectment, setting up ability and willingness to provide for the plaintiff; or by an independent suit in equity based on that ground.

The second of those cases was where the lessor brought ejectment to enforce forfeiture of a lease for non-payment of taxes, and the court held that where the non-payment was a mere omission and not an act of willful bad faith, the lessee could obtain relief from the forfeiture by answer to the ejectment suit, or an independent action in equity setting up the omission to pay and that all payments had been subsequently made.

The last of those cases was decided by the same court. It was an action to foreclose a mortgage. The answer set up that the mortgagee had agreed that so

long as certain mortgages, prior to his, remained un-foreclosed, and so long as taxes were not in arrears more than thirty days, he would not institute proceedings to foreclose his mortgage. Taxes were, by the negligence of the mortgagor's son, who had been provided with the money to pay them, left unpaid for more than thirty days, but they were paid immediately upon discovering the default. It was held that the neglect not being willful, but a mere omission, the mortgagor was entitled to relief.

It will be noticed that those are cases where there was an independent action setting up cause and excuse for relief against an attempted forfeiture; or where the same thing was set up by answer in a case seeking to declare a forfeiture. They are cases where the act was confessed and matter of equitable excuse, or, we might say, avoidance, was especially set up, not in denial of the plaintiff's case, but rather in avoidance of it. In the present case defendant has not asked to be relieved of a forfeiture. In the trial court he never, by plea or otherwise, intimated a desire to be relieved. He has, on the contrary, stoutly maintained from the outset, that there had neither been a forfeiture, nor a cause for a forfeiture. He now seeks relief which he never asked and which would be in the face of his position taken from the beginning of the controversy.

Whether in this State, at this time, a defense of the nature of those just referred to would have to be set up in the lessee's answer, or whether it could be omitted there and subsequently be made the object of an independent action, need not be decided. Neither do we undertake to say that defendant had any cause for equitable relief, within the meaning of the cases just commented on, at the time the present bill was filed, especially in view of the nature of the contest between the parties after the sale by Holmes. The taxes were not paid by defendant until after the contest was approaching the end, and several days after plaintiff's

entry and forfeiture of the lease and its rights had become perfected.

In Illingworth v. Miltenberger, 11 Mo. 80, the provisions of a lease permitted the lessor to forfeit it if the rent was not paid within ten days after becoming due. A tender of the rent had been made before the rent was due, which the court held the lessor was under no obligation to accept at that time. The rent then became due and not being paid at the end of ten days, the lessor declared the lease forfeited. In a few days thereafter a tender of the rent was made by the lessee, but the court held that such tender·and offer to pay the· rent, "could avail him nothing, inasmuch as a forfeiture had been declared." But, as stated, it is not necessary to pass upon this question, since it is a matter outside the case made by the defendant himself as developed in the record.

8. We have already seen that an entry was sufficient exercise of the option of forfeiture to make the forfeiture complete. But as trespass (the thing complained of here) is primarily an offense against one's possession, it is necessary that plaintiff must not only have entered and thus signified his election to forfeit the lease, but it must have acquired a possession. We are satisfied that it did. Leaving out of view the evidence as to plaintiff employing a watchman and putting him in charge of the premises, and that it had a force of employees engaged in tearing down the stone wall on the north; not considering that part of the evidence which tends to show that each party was endeavoring to have the premises kept under the care of their respective servants at the same time; it yet remains as a fact, indisputable, that plaintiff was in the undisturbed possession from the ninth to the twelfth of November, if not from the first of that month; that it exercised possessory acts in various ways, including the letting of the ground for practice and for games and taking the receipts. And this was not all. The

grounds were really in the immediate charge of witness Meyers, as heretofore stated, and he quit the premises in consequence of the property having "changed hands," taking with him defendant's personal property used in connection with the grounds. Shively, who seems to have been the main contestant against plaintiff, had merely an indefinite permissive occupancy at certain times for practicing and playing games. This was evidenced by defendant's two letters to him. Having shown that plaintiff had the right to forfeit the lease; that the right was exercised, completing the forfeiture, that possession was taken, it follows that plaintiff should have had judgment below instead of defendant. Davis v. Burrill, 10 Common Bench 821.

9. But it is well to add that the position taken by defendant that plaintiff should not be allowed to prevail by reason of the rule that equity never declares a forfeiture, is, we think, a misconception of the status of the case. Plaintiff is not seeking to have a court of equity declare or enforce a forfeiture. That has been already done by plaintiff in making entry and taking possession. Plaintiff is only seeking now to prevent a recurrence of trespasses made upon a possession he secured after forfeiture.

10. The following written ratification and confirmation of the lease made by Arnold while under arrest, and already referred to, is a part of defendant's case.

"Kansas City, Mo., Nov. 16, 1901.

"The foregoing lease, which is a copy of the lease between James T. Holmes and James H. Manning for the premises described therein, is hereby ratified and confirmed. Said lease to expire and possession of said premises to be surrendered by said Manning on first day of December, 1901, until which date said Manning shall have quiet and exclusive possession of said premises, and the Metropolitan Land Company agrees to

build forthwith a board fence at least ten feet high upon the stone wall and in place of fence torn down at northwest corner of said premises.

"11:40 p. m. (Signed)    "METROPOLITAN LAND Co.

"By Jas. H. Arnold, Pt."

We are of the opinion that it should not be regarded. The only consideration for it was that Arnold should be released from arrest and his prosecution dropped. This was clearly illegal. An agreement founded upon one party to it abstaining from a prosecution, or to dismiss one already begun, is void. Sumner v. Summers, 54 Mo. 346; Baker v. Farris, 61 Mo. 390; Partridge v. Hood, 120 Mass. 403.

Plaintiff being entitled to the undisturbed possession of the property, the judgment will be reversed and the cause remanded with directions that the trial court make all necessary orders in discharge of the receivership and render judgment for the plaintiff.

The other judges concur.