Robert C. HOODENPYLE et
al., Appellants,

v.

TACTOR INDUSTRIES, INC., et
al., Respondents.

No. WD 30257.

Missouri Court of Appeals,
Western District.

Dec. 31, 1979.

Motion for Rehearing and/or Transfer
Denied March 3, 1980.

Application to Transfer Denied
April 8, 1980.

William C. Partin, Matt Partin, Kansas City, for appellants.

Samuel J. Molby, Thomas N. Sterchi and Stephen W. Grow, Kansas City, (Watson, Ess, Marshall & Enggas, Kansas City, of counsel), for respondents.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

As to the only remaining respondent, Southgate State Bank and Trust Company, appellants' action sounds in trespass upon a building located at 1331 Woodswether Road, Kansas City, Missouri. The property was leased by the Hoodenpyles on February 1, 1974, for 5 years at a rental of $2,200 per month, to Tactor Industries, Inc. The first count of the petition was against Tactor to recover under the lease. A second count was against the Paintins to recover against them upon a guaranty of lease obligation to Hoodenpyles. At trial, the Hoodenpyles dismissed as to Tactor because it was defunct. The jury returned a verdict for Paintins, but a new trial was granted, a separate trial was had as to them, with a verdict for Hoodenpyles, and that case was settled later. The trial court directed a verdict in favor of Southgate, and the propriety of that action is the issue here. The resolution of the issue turns upon whether the facts show that Hoodenpyles had such a possessory interest prior to November 26, 1974 (when Tactor was evicted) as to maintain an action in trespass, and whether their claim of lien on Tactor's property forecloses their action in trespass after that date.

Tactor, being controlled by John D. Paintin, was formed by him to operate King Container Company, a manufacturer of metal trash containers. Tactor entered into possession of the leased premises on February 1, 1974, and rentals were paid to Hoodenpyles through September, 1974. Paintin controlled Tactor until May, 1974, when he sold his capital stock to J. R. Dominick, II, and Richard A. Sandifer. Under the supervision of Southgate's officer, E. Dudley McElvain, a loan of $300,000 was made to Tactor on May 21, 1974. The note therefor was executed on behalf of Tactor by Sandifer and Dominick and was guaranteed by them and their spouses. It was further secured by a security agreement covering Tactor's inventory, accounts receivable, furniture and fixtures and equipment, but it did not grant to Southgate any security interest of Tactor in the lease to Hoodenpyles. Prior to the lease date, apparently Tactor owed Southgate, the loan amount not appearing. Hoodenpyles then agreed to a lease clause making the lien (also in a lease clause) on Tactor's property for unpaid rentals subject to and secondary to Southgate's security interest.

When Tactor failed to pay the October, 1974, rent, Hoodenpyle, in October, the date not appearing, went to the premises and demanded payment from Johnston, Tactor's then president, but was told to return in two days, which he did. The rent was still not paid, so Hoodenpyle went to the second floor of the premises and demanded payment of Dominick, but the rent was still unpaid even after several other demands, one directed to Dominick from Hoodenpyles' attorney.

By September, 1974, Tactor did not have funds or credit to procure raw material it needed to manufacture products for which it had orders. On September 10, 1974, Southgate issued notices to all of Tactor's debtors to pay all accounts receivable to Southgate. Hoodenpyle was aware of these letters when he was with McElvain at the Tactor's plant when discussion was being had as to a loan through the Missouri Industrial Commission, at which time he demanded of McElvain to pay the rent. "He told me that he would not pay the rent now or ever." The deposition testimony of

McElvain was read to the effect that the notification to Tactor's debtors as to payment to Southgate had the effect depriving Tactor of its revenues. About this time Southgate devised a plan to take over Tactor's business for the sole purpose of liquidating the loan to Southgate. McElvain admitted that it was Southgate's plan only to pay Tactor's obligations which were directly required to produce finished products, and this did not include rent. A part of the plan was for Southgate to approve, by McElvain, all check-writing operations, and some checks were signed by Southgate's representatives. These arrangements were not made under a resolution of Tactor's directors, but were a matter of convenience to Southgate. One Green was employed as production manager for Tactor in August, 1974. Johnston was his immediate superior and Dominick had his office on the second floor of the plant, and he checked with Green daily as to production. Green soon learned that Tactor was in bad shape in that production materials could not be obtained because of credit problems and it was heavily indebted to Southgate. About this time Green started seeing McElvain at the plant. Johnston's authority to sign checks was removed, he was removed from the payroll, he quit supervising Green, and was rarely at the plant. Dominick shortly thereafter stopped coming to the plant, moved his offices away, and took with him his desk, furniture, carpeting, statues and rug. Janice Michaels, who had also been authorized to sign checks, left about a week later. The plant work force had then been reduced to about one-half— all of the executive administrative personnel were gone and many production people. McElvain was on the premises off and on all the time, coming in daily to pick up checks and mail until Tactor's incoming mail was routed into a Southgate controlled post office box. He told Green if he stayed and got production out, Southgate would assure him of his pay. There was then enough material to do a lot of production. He instructed Green to speak to production workmen to see if they would stay and to tell them Southgate would also assure them

of their pay. In the liquidation procedure Green was under McElvain's supervision, reporting to him as to production, sales, picking up raw materials, and cash flow. Tactor's public admission of insolvency, a letter to creditors, was issued on November 7, 1974. Merchandise previously ordered on open account was received, and McElvain took the position that it was then Southgate's property. Items of finished property were removed and stored elsewhere because McElvain was afraid Hoodenpyle would lock up the building. After October 14, 1974, Tactor's invoices for its manufactured products in the Hoodenpyle building totalled $63,001.06. On that date, Tactor's letter to its creditors advising them that it was not able to pay its obligations, was issued, reciting further that " * * * on October 14, 1974, the bank * * * placed our loans in default and accelerated the payment terms. It then took possession of our assets and is in the process of liquidating these in order to reduce our loan."

The Hoodenpyles' lease contained this provision: "18. Default: If default is made in the payment of any installment of rent on the due date thereof, * * * or if the premises be vacated or abandoned in violation of the terms hereof, then in any such event that this lease shall terminate, at the option of the LESSOR, and LESSOR may re-enter the premises and take possession thereof, with or without force or legal process and without notice or demand, * * *, and upon such entry, as aforesaid, this lease shall terminate and the LESSOR may exclude LESSEE from the premises, changing the lock on the door or doors if deemed necessary, without being liable to LESSEE for any damages or for prosecution therefor, LESSOR'S rights in such event may be enforced by action in unlawful detainer or other proper legal action, * * *." The lease provides that the monthly rentals of $2,200 shall be due on the first day of each month during the five year term. It also provides for a $4,400 security deposit for the performance of covenants and conditions. Apparently, this amount was paid to and held by Hoodenpyle and was not at the

time of trial applied to Tactor's past due and unpaid rentals.

On October 31, 1974, Hoodenpyles filed a Landlord's complaint against Tactor and Southgate for the October rental and for possession. Service was made upon Tactor on that day and upon Southgate at its banking offices at 7600 State Line, by serving McElvain. Because of delay occasioned by Southgate being a foreign corporation, Hoodenpyle elected to proceed against Tactor alone, and dismissed the action as to Southgate without prejudice. Judgment as to Tactor only was rendered for $2,200 and for possession of the premises on November 21, 1974, and execution was had on November 26, 1974, by serving the writ upon Joe Herring, Southgate's officer, who along with Green and one or two other people, were in the leased premises. The constable informed Herring that the writ was for possession and they would have to leave at that time and the building would be locked and employees would have to leave. Herring advised Hoodenpyle and his counsel that they would be responsible for Southgate's machinery. Upon leaving, Herring removed some records. Southgate did not demand possession of the machinery or an opportunity to remove it until February, 1975, after this action was instituted and the equipment was finally removed on March 17, 1975. There was no action by Tactor or any of its officers or directors which would have prevented Southgate from removing its collateral under the security agreement.

Under the Hoodenpyles' original petition, paragraph 17, Count III, it was pleaded that they were entitled to a lien on the personal property of Southgate remaining on the leased premises, and prayed thereunder that the personal property be sold and the proceeds be applied to the Hoodenpyles' claims. On February 7, 1978, the Hoodenpyles deleted paragraph 17 of Count III of their petition.

The Hoodenpyles first say that although they did not have actual possession (of the premises) until November 26, 1974, they had a sufficient possessory interest to maintain an action in trespass as of October 31, 1974, because lessee Tactor breached the lease by failing to pay October rentals; Tactor abandoned the leased premises on or before October 31, 1974; Hoodenpyles declared a breach of the lease, demanded possession of the premises, instituted a suit to secure possession, and obtained service of process on Tactor on or before October 31, 1974, and Tactor's possessory rights thereby terminated. In support of this subpoint, Hoodenpyles argue that under these facts, they have a constructive right of possession which gives rise to a right to maintain trespass. They acknowledge that a lessor generally has no right to maintain trespass against a third party who interferes with possession of a leasehold, because the lessor lacks a possessory interest, the lessee being entitled to *exclusive* possession under the case of *Linderbower v. Bentley*, 86 Mo. 515, 519 (1885). Hoodenpyles seek to distinguish *Lindenbower* by these contended facts that Tactor had abandoned the premises and had defaulted in the payment of rent, which removed its right to *exclusive* possession and gave Hoodenpyles the requisite "possessory" interest to maintain trespass. It is said that the *Lindenbower* rule is inapplicable when a lessee has given up or lost his possessory interest in the leasehold. Cited for the Hoodenpyles' contention that they had a sufficient "constructive" possessory interest to maintain trespass against the third party, Southgate, is *Brown v. Hartzell*, 87 Mo. 564 (1885). That case did not involve a landlord and tenant, but two persons who claimed title, the plaintiff under patents and a deed, and the defendant under a contract for a deed, both under the same grantor, Crumb, the defendant having cut timber which was the alleged trespass. It noted, page 568, "This action of trespass can only be maintained where the plaintiff is in the actual or constructive possession of the premises. There is no evidence of actual possession on the part of the plaintiff, or of Crumb, in the case. The possession is constructive when the property is in the custody and occupancy of no one, but rightfully belongs to the plaintiff. In that case the title draws to it the possession. * * *

If the defendant was in possession of these lands from which the trees were taken under his contract for purchase, the plaintiff cannot maintain this action." The court noted that the case was tried on the wrong theory (trespass) and reversed and remanded it. *More v. Perry*, 61 Mo. 174 (1875), was also a case involving cross-allegations of title between plaintiff and defendant, the latter being in actual possession, claiming to hold by an adverse title, which barred the trespass action—ejectment being said to be the proper remedy, wherein "plaintiff may recover damages for the waste and injury, as also the rents and profits." These cases do not aid the Hoodenpyles. *Prater v. Stubblefield*, 483 S.W.2d 669 (Mo.App.1972), merely notes that the English rule that actual possession is necessary to maintain an action in trespass has relaxed in this country in favor of the constructive possession basis for the action. There cited are two cases clearly involving constructive possession: *Allen v. Wehrman*, 204 S.W.2d 464 (Mo.App.1947), holding that trustees of a cemetery were in such constructive possession as to maintain a trespass action; and *Schmidt v. City of Tipton*, 89 S.W.2d 569 (Mo.App.1936). In the *Prater* case, the trespass occurred *before* a purchaser was given possession under a contract of sale, and thus he was not able to maintain the action in trespass.

▮ Here, although Hoodenpyle made his demand, or demands, for past due rent, as a condition precedent to an action to recover possession of the premises under § 535.020, RSMo 1978, he at no time effected a reentry into the premises prior to the time the constable served the writ of possession on November 26, 1974, based upon the failure to pay rent, or even upon alleged abandonment. Instead, Hoodenpyle elected to proceed under the Magistrate procedure of Chapter 535, RSMo. Until those proceedings were concluded by judgment, the lease to Tactor subsisted for it could have, under *Long v. Rucker*, 166 Mo.App. 572, 149 S.W. 1051 (1912), and § 535.040, tendered the past due rent and costs, thus defeating the action for possession. If, as the evidence tends to show, Southgate entered the leased premises with Tactor, pursuant to protecting its lien under the security agreement, and if this was a violation of some lease provision, Hoodenpyles' only remedy would have been against Tactor. *Hawkins v. Roby*, 77 Mo. 140, 143 (1882). Further controlling the Hoodenpyles' standing here to maintain trespass against Southgate, for the first period of time claimed (October 10, 1974 or October 31, 1974, until November 26, 1974), is the case of *Metropolitan Land Co. v. Manning*, 98 Mo.App. 248, 71 S.W. 696 (1903), which was a suit to enjoin a threatened continued trespass. Previous to the suit, there had been breaches of lease provisions, and as held, the lessor had entered the premises and declared a forfeiture of the lease. The court said, page 701[8], "We have already seen that an entry was sufficient exercise of the option of forfeiture to make the forfeiture complete. But as trespass (the thing complained of here) is primarily an offense against one's possession, it is necessary that plaintiff must not only have entered, and thus signified his election to forfeit the lease, but it must have acquired a possession. We are satisfied that it did." The evidence was the plaintiff exercised possessory rights in various ways, including letting the ground for practice and for games, and taking the receipts. Defendant's employee, Meyers, lived on the grounds and had charge of its property, which he removed them when he left, giving as a reason for abandonment that the premises had changed hands. No comparable facts here exist. The Hoodenpyles made no entry at all until the constable served the writ of possession. They had in no way treated the property as having a superior right of possession in them as against Tactor lessee, prior to that time, other than making demand of it for rent and filing the suit for possession, which as noted, could have been defeated up to the time of hearing by Tactor's payment of rent in arrears. No facts are in this case showing either a constructive right to possession or actual possession prior to November 26, 1974.

■ No abandonment of the premises by Tactor for the period October 1, 1974 (when the rent was first unpaid) and November 26, 1974 (the date of service of the writ of possession) was shown by Hoodenpyles. Indeed, under their own evidence, it was shown that Tactor's employees were on the premises up to the latter date. Furthermore, as is stated in 51C C.J.S. Landlord & Tenant § 125(1), p. 398, "An abandonment of leased premises by the tenant constitutes an offer to terminate the lease, and an abandonment or surrender of the premises by the tenant, coupled with an acceptance thereof by the landlord, as by a resumption of possession, may constitute a surrender by operation of law which terminates the lease just as effectively as if there had been a valid agreement of surrender in advance." And, at § 125(2), p. 399, of the same authority, it is said, "In order to constitute an abandonment or surrender of the premises which on acceptance by the landlord will constitute a surrender of the lease by operation of law, there must be an intent to abandon and conduct by which the intention is carried into effect, or such a relinquishment by the tenant as will justify an immediate resumption of possession by the landlord." Compare *Crawley v. Mullins*, 48 Mo. 517, 519 (1871), where a judgment for the landlord was affirmed upon the giving of an instruction to the effect that defendant quit possession of a sawmill with intention to abandon the same, then the abandonment of the mill was an abandonment of the dwelling. Defendant had gone away and the landlord had taken possession of the mill, the running of which was consideration for the lease of the dwelling. See also the discussion of abandonment *Von Schleinitz v. North Hotel Co.*, 323 Mo. 1110, 23 S.W.2d 64, 74[1] (Mo.1929). No evidence was here adduced showing an abandonment, a quitting of possession, and an entry thereafter by Hoodenpyles, so as to thereafter give rise to an action by them against Southgate in trespass.

■ The gist of Hoodenpyles' claim of further trespass by Southgate occurring after November 26, 1974, is that it occupied the premises "by reason of the fact that certain items of inventory, certain work in process, certain large metal forming and shaping machines and certain equipment, furniture and fixtures owned or claimed by Southgate remain in or on Plaintiffs' premises. By reason of the continued occupancy of Plaintiffs' premises by Southgate in the manner aforesaid, Plaintiffs are denied and prevented from enjoying the use and possession of their said premises and are effectively prevented from reletting the premises." It is argued that the facts show (as they do) neither did Herring, or any other representative of Southgate, demand possession of the machinery or an opportunity to remove it until some time in February, 1975, after Hoodenpyles instituted this suit; and that Southgate had ample opportunity to remove its collateral. It appears without question that Southgate had taken possession of Tactor's property under the security agreement, and did not remove them until March 20, 1975, long after the Hoodenpyles had definitely established their possessory right (November 26, 1974) as a requisite to maintaining the trespass action allegedly occurring thereafter by Southgate's leaving the property on the premises. The rule is stated in Rest.2nd Torts, § 160, that "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor or his predecessor in legal interest has placed on the land (a) with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated, or (b) pursuant to a privilege conferred on the actor irrespective of the possessor's consent, if the actor fails to remove it after the privilege has been terminated, by the accomplishment of its purpose or otherwise." It is said, in effect, in the footnotes of this section that there is little case law authority to support it. Nevertheless, the restatement just quoted supports the Hoodenpyles' theory as to their damages in trespass for their allegation that Southgate left on their property chattels after Tactor's consent had been "effectively terminated" by Hoodenpyles' judgment of possession.

Southgate argues that the fact that Hoodenpyles claimed a lien under their lease (which lien was made secondary to Southgate's security interest lien in the lease) bars the Hoodenpyles from maintaining their action in trespass for the events occurring after November 26, 1974. It is true that these two contending liens were in the case when Hoodenpyles filed the instant suit on January 10, 1975. Yet steps were taken by Southgate to effect removal of the liened property in February, 1975, and it was removed on March 20, 1975. Although Hoodenpyles did not delete the paragraph of their petition claiming a lien until the day of trial, February 7, 1978, it was a question for the jury as to the trespass and any damages resulting therefrom, and for what period of time that the property was left on the premises after any demand (or agreement, if so) was made for its removal. It was thus error for the trial court to direct a verdict upon that portion of Hoodenpyles' claimed trespass occurring after November 26, 1974. There is no necessity to rule upon the exclusion of Exhibit No. 8, as it does not bear upon the second period of claimed trespass.

The judgment upon directed verdict for Southgate as to claimed trespass occurring before November 26, 1974, is affirmed. The judgment as to claimed trespass occurring after November 26, 1974, is reversed and the case is remanded for new trial as to that issue.

All concur.

### On Motion for Rehearing

PER CURIAM:

In their motion for rehearing or in the alternative, transfer to the Supreme Court, appellants, the Hoodenpyles, contend that the opinion herein is in error in its holding that there was no abandonment of the leased premises by Tactor. For the period prior to November 26, 1974, whether Hoodenpyles had a constructive possession upon which they could base their action in trespass against Southgate turns, of course, upon whether there was an abandonment of the leased premises by Tactor.

All there is in this case is Tactor's failure to pay rent, and Hoodenpyles' demand or demands for past due rent. There is no evidence at all that the Hoodenpyles did any act to effectuate their right of reentry and forfeiture of the lease without legal process. It is said further to the above quotes in the opinion at 51C C.J.S. Landlord & Tenant § 125(4), p. 402, with regard to acceptance of an abandonment of a lease, "There must, however, be some unequivocal act on the part of the landlord which unmistakably evinces an intention on his part to terminate the lease and the relationship of landlord and tenant; * *." It is significant in this case that the Hoodenpyles did not pursue the alternative course available to them under paragraph 18 of the lease (set forth above in the opinion) upon default in payment of rent, vacation or abandonment, to "re-enter the premises and take possession thereof, with or without force or legal process and without notice or demand, * * *." Instead they elected the remedy of a landlord's complaint. As noted, the lease continued to be in force, with its attendant right of possession in Tactor, up to November 26, 1974. That lease and its attendant possession stood as a bar to the Hoodenpyles' trespass action against Southgate, regardless of the reason the latter was on the premises prior to November 26, 1974. The bare demands for rent arrearage, without other acts showing an intention to terminate the lease prior to that date, cannot give rise to the requisite possessory interest in order to maintain an action in trespass.

Appellants' motion for rehearing is overruled; their motion to transfer to the Supreme Court is denied.

Respondent Southgate's motion for rehearing is overruled; and its motion to transfer to the Supreme Court is denied.