VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

---

## IN THE MATTER OF OSCAR STRASBURGER.

*Landlord and tenant — an eviction, occasioned by the latter becoming insane and not paying the rent under the principal lease — right of a sub-tenant to recover, from the principal tenant, the damages-resulting to him therefrom — measure of damages.*

A tenant of real property who has under let the same to other parties, and by reason of his subsequently becoming insane has failed to pay the rent to the owner of the premises under his lease thereof, because of which he and his sub-tenant have been evicted from the demised premises, is not liable to such sub-tenant for the difference between the rent agreed to be paid by him and the actual value to him of the leasehold estates.

*Mack* v. *Patchin* (42 N. Y., 167) followed.

A lessee can ordinarily recover for a breach of the covenant of quiet enjoyment, by way of damages, only such rent as he has advanced, and such mesne profits as he has become liable to pay. The rule is otherwise where the lessor has been guilty of fraud, or having the ability to make good the title of his lessee intentionally fails to do so.

APPEAL by Simon L. Deutsch and Alexander Deutsch, composing the firm of Deutsch & Co., claimants, from a judgment, entered in the office of the clerk of the county of New York on November, 3, 1886, settling the estate of Oscar Strasburger, an alleged lunatic, and distributing the proceeds thereof.

The appellants claimed the same *pro rata* share of said estate as the other creditors, by reason of certain alleged damage resulting to the appellants, because of the failure of the lunatic to pay the rent due under a lease of certain premises occupied by the claimants under a sub-lease from him.

As the result of an order of reference made therein in respect to the claim of Deutsch Bros., the following facts were found by the referee :

*First.* That Oscar Strasburger entered into a lease with Simon L. Deutsch and Alexander Deutsch, bearing date February 6, 1882, and also into another lease bearing date December 6, 1883, which leased and demised to the said Messrs. Deutsch the premises described as follows : The first, third, fourth and fifth lofts of the building known as Nos. 50 and 52 Howard street and 16 Mercer street, in the city of New York, for terms of years expiring February 1, 1886, at the annual rental of $4,500.

*Second.* That the Messrs. Deutsch entered into possession of the premises described in said leases, and subsequently and before the 20th day of November, 1884, sub-let to various parties the said premises.

*Third.* That the said Messrs. Deutsch sub-let the said premises, leased to them by the said Oscar Strasburger, at the sum of $7,700 per annum, and all thereof, for the terms specified in the leases made by them with the said Oscar Strasburger, except a small portion which they rented to one S. Hamburger for a year.

*Fourth.* That the Messrs. Deutsch entered into written agreements with all the parties to whom they sub-let parts of the premises leased by them from the said Oscar Strasburger, except for a small portion of the first floor of the said premises, which were rented to the said Hamburger at a rental of $100 per annum.

*Fifth.* That all the parties to whom the Messrs. Deutsch rented the premises leased by them from the said Oscar Strasburger are solvent.

*Sixth.* That on or about the 1st day of November, 1884, the then committee of Oscar Strasburger demanded from the Messrs. Deutsch the rent in advance for the quarter beginning November 1, 1884, and which rent the Messrs. Deutsch paid and received a receipt therefor from the then committee of Oscar Strasburger.

*Seventh.* That on or about the 20th day of November, 1884, the owner of the premises, and the landlord of Oscar Strasburger, instituted summary proceedings for non-payment of rent, and made parties to said proceeding the Messrs. Deutsch and their sub-tenants.

*Eighth.* That such proceedings were had in said summary pro-

ceeding that judgment was rendered in favor of the landlord, a warrant of dispossession issued, and the Messrs. Deutsch and their sub-tenants removed.

*Ninth.* That the rent payable by Oscar Strasburger to his landlord, the owner of the premises, was the sum of $10,500 per annum.

*Tenth.* That the difference between the rent paid by the Messrs. Deutsch under the leases made by them with Oscar Strasburger, and that received by them from their sub-tenants, was $3,200 per annum.

*Eleventh.* That the rental received by the Messrs. Deutsch from their sub-tenants appears to be the reasonable rental value of the said premises.

Upon these facts the referee was asked to find the following conclusions of law, which he refused.

*First.* That the Messrs. Deutsch are entitled to recover damages, by reason of their dispossession from the premises leased to them by Oscar Strasburger, the lunatic, from the 20th day of November, 1884, when they were removed from the premises, to the period fixed for the end of the terms for which they hired the said premises, and amounting to the sum of $3,831.10, with interest from February 1, 1886.

*Second.* That they are entitled to have this amount allowed as a claim against the estate of Oscar Strasburger, a lunatic, and are entitled to share in the distribution of the said estate among the creditors of the said Oscar Strasburger.

*Third.* That they are entitled to their costs of this proceeding. To the refusal of the court to enter a judgment in conformity to these findings the appellants duly excepted.

*J. Fettretch*, for the appellants.

*E. Conway*, for the respondent.

BRADY, J. :

Oscar Strasburger, the lessee, subsequent to the execution of the leases to the appellants, became insane, it appears, and on the 17th of September, 1884, a committee of his property was appointed, who duly qualified and entered upon the discharge of his duties.

At the time, therefore, that Strasburger executed the leases in question to the appellants, mentioned in the statement of facts, he

was sane, and the non-payment of the rent by him under his lease to the owners of the property, which resulted in the eviction of the appellant, occurred during his insanity. It may be said, therefore, that he did nothing conducing to the eviction for which he was responsible or in any way identifying him with it. His responsibility had, in consequence of his unfortunate condition, entirely ceased and the bailiff of the court was put in possession of his property.

If there had been no change in his mental condition, and the relations existing between the appellants and him by virtue of the leases had continued, and by his wrongful act he had caused the eviction of the appellants, he would doubtless have been responsible for the damages occasioned by his wrongful act under the authorities.

The rule in regard to damages resulting from a breach of the covenant of quiet enjoyment may be said to be peculiar, and it is that the lessee can ordinarily recover only such rent as he has advanced, and such mesne profits as he is liable to pay over. (*Mack* v. *Patchin*, 42 N. Y., 171.) There are exceptions to the rule as stated in that case, and they are said to be : " If the vendor is guilty of fraud ; or can convey, but will not, either from perverseness or to secure a better bargain ; or if he has covenanted to convey, when he knew he had no authority to contract to convey ; or where it is in his power to remedy a defect in his title, and he refuses or neglects so to do ; or when he refuses to incur expenses which would enable him to fulfill his contract ; in all these cases, the vendor or lessor is liable to the vendee or lessee for the loss of the bargain, under rules analogous to those applied in the sale of personal property," the rule of damages being the same in actions brought against vendors for failure to complete a contract, and in actions brought against lessors for violations of the covenant of quiet enjoyment. They are both referred to in stating the exceptions to the general rule already mentioned.

The case just quoted is reaffirmed and its doctrine reiterated in *Cockcroft* v. *New York and Harlem Railroad Company* (69 N. Y., 207). And in *Trull* v. *Granger* (8 id., 115) the right to recover in cases kindred to that of the appellants rests upon the tortious conduct of the lessor. If, in this case, for example, Strasburger, not at the time being a lunatic, had declined to pay the rent which resulted in the eviction mentioned, he would be responsible

for the damages sustained. The duty of paying the rent, if any duty existed, as to which *quære*, resting upon the committee in order to avoid proceedings to dispossess the occupants, including the appellants, then the remedy would be against him, and not against the estate of the lunatic.

The absence of any right to pursue the estate is evolved from the principles declared by these cases, and the referee was, therefore, right in declining to hold the estate responsible. It appears, in addition, according to the statement made by one of the appellants before the referee, that an important incident in reference to the demise occurred, and which is related by him as follows:

"Two or three days after I had paid the rent to Albert Strasburger for the three months in advance, the agent for the owner had me come down to see him, and he told me that there was no rent paid for the premises I occupied for the past three months or longer, and that in consequence of their not paying the rent I should be dispossessed unless I could get Mr. Strasburger to pay the rent due, and they would transfer the lease, with his consent, to me; I said I would try and see what I could do in the matter, and the agent of the owner of the premises went with me to see Mr. Albert Strasburger, and we made him a proposition to pay the owner the rent due up to date — that is, up to November first, and transfer the rent already paid him up to February 1, 1884, and to consent to the transfer of the lease to me, which the owner was willing to give me for the same rent or a trifle advance on that which I paid to Mr. Strasburger; he did not consent to this, and shortly afterwards proceedings were taken to dispossess us, and we were dispossessed."

From this it also appears that the claimants might have saved their demise by an arrangement with the owner, who was willing to extend to them the term secured by the lease for the same rent which was to be paid by the lunatic or a trifle in advance. It is true that the committee refused to consent to such transfer, but there is little doubt that an application to the court would have resulted in an order directing that to be done, because it is manifest it would have been for the benefit of the estate. At all events, there is no doubt that the appellants, as sub-tenants, had a right to pay the rent to the original lessor for the purpose of protecting their own demise, and this could have been done, whether the committee consented to

it or not, if the latter was not ready to pay the rent due under the original lease.

For these reasons, although it is conceded that the question is somewhat novel, the judgment should be affirmed, with costs.

Daniels, J. :

Oscar Strasburger was himself the lessee of the premises leased by him to the claimants. In leasing to them he did not exceed his own term. But he became disabled to go on with his business and keep up his own rent, by his subsequent insanity. And that resulted in the removal of the claimants as sub-tenants, by summary proceedings. That was produced by his misfortune, not his fault. And as his title was defeated owing alone to that circumstance, as the law has been stated and followed in *Mack* v. *Patchin* (42 N. Y., 167), he was not liable, neither was his estate for the difference between the rents reserved in his leases to the claimant, and the value to them of the leasehold estates. That is the sole claim now made, as the rent paid in advance was refunded, and the judgment or decision should be affirmed.

Van Brunt, P. J., concurred.

Judgment affirmed with costs.