GEER, Appellant, v. BOSTON LITTLE CIRCLE ZINC COMPANY, Respondent.

St. Louis Court of Appeals, April 2, 1907.

1. **LANDLORD AND TENANT:** Covenants: Quiet Enjoyment. Where there is no express covenant in a lease, for quiet enjoyment, one is implied by law.

2. **PARTIES:** Trustee of an Express Trust. Where a lease was made in one person's name under an agreement that it was to be for the benefit of himself and another and subsequently a third person bought an interest in the lease, with an agreement that it was to be held for the benefit of the three, the one in whose name the lease was taken was trustee of an express trust of which the other two were beneficiaries and had a right to sue in his own name for breach of a covenant for quiet enjoyment.

3. **LANDLORD AND TENANT:** Sublessee: Forfeiture of Original Lease. A sublessee takes with notice of the covenants contained in the original lessee's lease, so that a forfeiture of the original term forfeits the term of the sublessee.

4. ———: ———: Privity. One who leases from an original lessee a part of the latter's term is a sublessee and not an assignee of such term, so that there is no privity of contract between such sublessee and the original landlord.

5. ———: ———: Covenants: Damage for Ouster. An under tenant, on being ousted for violation by the original lessee of a covenant in the original lease, has an action, on the covenant for quiet enjoyment in his sub-lease, for damages sustained by such ouster against his landlord, the original lessee.

6. ———: ———: Forfeiture of Original Lease. Where a mining lease provided that the lessee should leave pillars sufficient to support the roof of the mine, with a proviso for forfeiture for violation of the covenant, and the lessee sublet the land in parcels to several sublessees, a violation of that covenant by one of the sublessees, forfeited the original lease and all rights of the other sublessees.

7. ———: ———: ———: Notice. Where a covenant in an original lease was violated by the lessee, and the lessor, in accordance with the terms of the lease, declared a forfeiture and served notice on the original lessee by mailing such notice as provided by the terms of the original lease, the forfeiture was thereby validly declared and the landlord could enter and take possession as against a sublessee.

8. ———: ———: Eviction: Action on Covenant for Quiet Enjoyment. Where the original lessee forfeited his lease by violation of the covenants therein and his sublessee yielded to the paramount title of the landlord who declared the forfeiture, this was an eviction, and the sublessee could maintain an action against the original lessee on the covenant for quiet enjoyment, but must prove the right of the original lessor to re-enter.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

*A. E. Spencer* and *H. W. Currey* for appellant.

(1) The contract with the defendant company was in writing with plaintiff alone, and he is the trustee of an express trust under the provisions of section 541, Revised Statutes 1899. Ferris v. Thaw, 72 Mo. 446; Dodson v. Lomax, 115 Mo. 555; Harrigan v. Welch, 49 Mo. App. 496; Pomeroy's Code Rem. (3 Ed.), secs. 171, 173; Nelson v. Hirsch & Son's Co., 102 Mo. App. 512; Jones v. Railroad, 178 Mo. 528; Albany, etc., Co. v. Lunbery, 121 U. S. 481. (2) The contract of the Boston Little Circle Zinc Co. being in the nature of a grant of the right to occupy the land described in the contract, for the purpose of cleaning ore for a definite period, raises an implied covenant of quiet enjoyment and for a breach of this implied covenant the plaintiff can maintain this suit. Hamilton v. Wright, 28 Mo. 199; Maeder v. Corondelet, 26 Mo. 112; Boon v. Stone, 66 Mo. 430; Mach v. Pachin, 42 N. Y. 167. (3) And the implied covenant of quiet enjoyment flows from a license as well as from a lease. 2 Snyder on Mines, secs. 1290, 1301; Taylor on Landlord and Tenant (9 Ed.), secs. 251, 252. Wood on Landlord and Tenant, sec. 357; Ackerly v. Vilas, 27 Wis. 207; Eldrew v. Leoby, 31 Wis. 207; Hambly v. Delaware Co., 21 Fed. 552; Knotts v. McGregor, 35 S. E. 899.

*J. T. Sturgis* and *E. D. Merritt* for respondent.

(1)  It is not clear that the forfeiture declared by the Granby Mining and Smelting Co., forfeited plaintiff's rights; and I find from the evidence that he consented to the alleged forfeiture and thereby waived any rights that he may have had against the defendant. He is not the trustee of an express trust as to both his partners so as to be able to bring suit in his own name without being joined by them. The findings of fact, made by the court sitting as a jury, will not be inquired into or disturbed by the appellate court. Hamilton v. Boggess, 63 Mo. 233; Tucker v. Railway, 54 Mo. 177; Waddell v. Williams, 50 Mo. 216; Young v. Stephens, 66 Mo. App. 222; Vette v. La Barge, 64 Mo. App. 179; Fullerton v. Carpenter, 97 Mo. App. 197; Everman v. Eggers, 106 Mo. App. 732; Dodd v. Guiseffi, 100 Mo. App. 311; Dobbins v. Humphresy, 171 Mo. 198. (2)  So far as Ball is concerned the contract of lease was in no sense made for his benefit for he had no interest whatever in the least at the time the contract was made, nor was he even thought of in connection with the lease, until two and one-half months thereafter. Nelson v. Hirsch & Sons Co., 102 Mo. App. 512; Snider v. Adams Express Co., 77 Mo. 527. (3)  This action is founded on the implied covenant of quiet enjoyment contained in a written lease. There is no tort, or suggestion of tort, on the part of defendant. Defendant did not personally operate any of the mining claims; its operations were carried on solely by sublessees; the landlord (the Granby Mining and Smelting Co.) stated to Geer and all other sublessees, at the time of declaring forfeiture, that it had no fault to find, or complaint to make, of them; but that forfeiture was declared for the purpose of enabling said Granby Co. to get rid of defendant company and enable said Granby Co. to make more favorable leases to said sublessees. Profits and expenses are allowed in cases sounding in tort, and as punishment to the wrongdoer,

but not in actions on contract. Gildersleeve v. Overstöltz, 90 Mo. App. 522; Hughes v. Hood, 50 Mo. 350; Mack v. Patchin, 42 N. Y. 167; Murphy v. Century Bldg. Co., 90 Mo. App. 621; Wolff Shirt Co. v. Frankenthal, 96 Mo. App. 314; Lanigan v. Kille, 39 Am. Rep. 797; Rhodes v. Baird, 16 Ohio St. 59. (4) The so-called forfeiture declared by the Granby Company was without notice and was wholly illegal. The defendant company did not have its "day in court," and the Granby Company took upon itself the duties of judge, jury and sheriff. The Granby Company was not acting within the scope of its authority in posting notices of forfeiture and was a trespasser. There was no covenant of quiet enjoyment in the lease from defendant company to Geer. Geer's rights are predicated on an implied covenant; but this implied covenant did not cover illegal acts of strangers or trespassers. R. S. 1899, sec. 4108; Huiest v. Marx, 67 Mo. App. 418; 1 Taylor on Landlord and Tenant, sec. 305.

GOODE, J.—Damages in the sum of three thousand dollars are demanded of defendant for breach of a covenant for quiet enjoyment of a leasehold. No express covenant of the kind is contained in the lease, but one is implied by law, as is conceded. [Jackson v. Eddy, 12 Mo. 209, 212; Smith v. Thurston, 19 Mo. App. 48; 1 Taylor, L. and T. (9 Ed.), sec. 304.] When the lease was taken it was for the benefit of W. S. Gunning as well as plaintiff. In fact Gunning himself procured the lease, but had it written in plaintiff's name for the benefit of the two. It covered two mining lots together with a concentrating plant, the tools and machinery on them and a pile of tailings. The transaction was essentially a mining venture and two months after the date of the lease, W. C. Ball bought a third interest in the enterprise under an agreement, he swore, between himself, Gunning and Geer, that Geer was to hold and op-

erate the property under the terms of the lease for the three owners. On these facts the court below found Geer was not the trustee of an express trust and could not maintain the action; that his co-owners in the leasehold, Gunning and Ball, were necessary parties. This question is argued by defendant's counsel as though the answer to it depends on whether or not the lease contract was made in plaintiff's name for the benefit of Gunning and Ball, and we are pointed to the fact that though it may have been made for Gunning's benefit, it could not have been made for Ball's, because Ball was not thought of in the first instance as a partner. If the right of plaintiff to sue stood on the contract having been made in his name for the benefit of the other two parties in interest, this argument would be good; but we think his right rests on the fact that he was a trustee of an express trust. Our statutes (R. S. 1899, sec. 540) require every action to be prosecuted in the name of the real party in interest except as otherwise provided in section 541; which declares that an executor, administrator, trustee of an express trust, or any person expressly authorized by statute, may sue without joining with him the person for whose benefit the suit is prosecuted. It says further that a trustee of an express trust, within the meaning of the section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another. That statute, instead of restricting the meaning of the phrase, "trustee of an express trust," enlarges it to include not only those who are such trustees under the ordinary rules of equity, but those in whose names contracts are made for the benefit of third persons. [Pomeroy, Code Rem. (4 Ed.), sec. 100 et seq.; Weaver v. Wabash, etc., Co., 28 Ind. 112, 119; Snyder v. Express Co., 77 Mo. 523.] That Geer was a trustee of an express trust of which Gunning and Ball were beneficiaries, is clear; for all the evidence is that

the lease was held by the former on an express agreement by which they were to be co-owners and share losses and profits with him. We do not understand that any one but Geer and his partners could question the interests of the latter in the term on the ground that their interests were not proved by a written assignment. [Roth Tool Co. v. Champ Spring Co., 93 Mo. App. 530, 67 S. W. 967.]

The case was tried without a jury and at the conclusion of the evidence the court refused all the declarations requested by plaintiff and, in a written finding of facts, declared plaintiff could not recover, first; because it was not clear the forfeiture declared by the Granby Mining and Smelting Company forfeited his rights, and the plaintiff had consented to the alleged forfeiture and thereby waived any rights he might have had against the defendant; secondly, because he was not the trustee of an express trust as to both his partners, so as to be able to maintain the suit in his own name without joining them. What we have said disposes of the second finding. In dealing with the first one it is necessary to recite more of the evidence. Plaintiff was a subtenant under the defendant, a corporation, and the original lessee of the premises in controversy, as well as various other mining lots, from the Granby Mining and Smelting Company, the owner of the fee. The original lease given by the Granby Company was dated November 26, 1900, and ran for ten years. It did not cover the mill and machinery on the two lots leased by defendant to plaintiff, which properties were placed on the lots by defendant and belonged to it. The Granby Company's lease to the Boston Company (defendant) contained various stipulations and among others, one that pillars of ample size and sufficient in number to support the roof of the mines, should be left in all drifts in order to prevent the ground from caving. It also contained a stipulation that if defendant failed in any respect to

comply with and perform the terms of the lease, the first party might forfeit all the rights and privileges of the defendant, the lessee; whereupon all such rights and privileges should revert to the Granby Company and cease and determine as to the defendant; that a notice of declaration of forfeiture, served in person on defendant, or sent through the United States mail, should be sufficient notice. Defendant had sublet to various subtenants all the mining lots leased to it by the Granby Company. Its sublease to plaintiff was dated April 1, 1901, and was to run for two years, or less than the time of the original lease. On March 17 or 18, 1902, the Granby Company sent a written notice to the Boston Company of the forfeiture of its lease. Said defendant was a West Virginia corporation and the notice was mailed to its officers in said state and notified them the Granby Company would immediately re-enter and take possession of all the lots and premises leased to defendant. This forfeiture was declared, the evidence shows, on account of the failure of the Boston Company and its subtenants, to keep sufficient pillars in the drifts to uphold the roof of the mines or protect the workmen when under the ground. Simultaneously with the service of the notice of forfeiture by mail, the Granby Company, on March 18, 1902, took possession of all the property it had leased, including the lots held by plaintiff. There is testimony that the owners of the Granby Company at first requested plaintiff to shut down his mill and mining operations for a day or two, under a promise to grant him a new lease on terms similar to those contained in the one he held from defendant. Along this part of the case the evidence is somewhat contradictory and might support different inferences. A witness for defendant swore plaintiff did not protest against the forfeiture, "but made a little objection." It was further shown he said he would consult his attorney before taking any action. No lease was given to plaintiff and his

associates after the forfeiture; but whether this was because the Granby Company refused to give or plaintiff to accept a lease, is uncertain. Some of the testimony inclines to prove plaintiff could not agree with the Granby Company on terms; as he wished for a longer term than the unexpired portion of the lease he held from defendant and the Granby Company would grant no term of greater duration. There is evidence to prove plaintiff would not take a new lease because the Granby Company could not lease to him the machinery and tools on the lots, and there is evidence, too, that the Granby Company intended from the first not to execute a new lease to him. It is in proof that the attorney of the company said after the forfeiture, that plaintiff and his associates were fooling away their time trying to get a lease from the Granby Company for it would give none. The general manager of the company swore he had no recollection of promising to execute a new lease if Geer would surrender his claim under the lease from defendant, but that an offer was made to lease to Geer a month or two after the forfeiture. This witness said the company never had offered to furnish a mill and machinery to plaintiff if he would rent from them. It is in proof, also, that if plaintiff and his associates took a lease from the Granby Company they would have to put in a mill and machinery of their own. On the other hand, there is evidence tending very strongly to show the operation of the mines, and the cleaning of the dumps of tailings, had caused plaintiff a heavy loss. This fact and the talk between plaintiff and the officers of the Granby Company about his getting a new lease, are relied on by defendant as proof that plaintiff and his associates were anxious to get rid of their obligations under the lease from the defendant and acquiesced in the forfeiture of the Granby Company. In the written findings the court said it was not clear the forfeiture declared by the Granby Company had forfeited plain-

tiff's right. The doubt of the court appears not
to have touched the validity of the forfeiture
as against the Boston Company, but only its valid-
ity as against plaintiff as sublessee. This point has not
been briefed, or any reason assigned why plaintiff
should not be held to have taken with notice of the terms
and conditions under which defendant held, and to have
lost his term by the forfeiture of the main term. [2 Mc-
Adam, L. and T. (3 Ed.), p. 816, sec. 248; Frazer v.
Caruthers, 44 Ill. App. 61; Appleton v. Ames, 150 Mass.
34; Metropolitan Land Co. v. Manning, 98 Mo. App. 248,
256; Gilchrist v. Foxen, 98 Wis. 429; Winston v. Aca-
demy, 28 Miss. 118; Samson v. Rose, 65 N. Y. 411; Sher-
mer v. Paciello, 161 Pa. St. 69; Shannon v. Grindstaff,
11 Wash. 536; Burt v. Gray (1891), 2 Q. B. 98.] The .
essential fact at this point is that as plaintiff's term was
for only part of the original term instead of all of it, he
was a sublessee and not an assignee. [Jones, L. and T.,
sec. 445.] As to those characters in their respective re-
lations to the principal lessor, the rules are, in many
respects, different. This result flows in the main, from
the fact that a subletting does not create privity of con-
tract between the subtenant and the principal lessor,
whereas an assignment does create privity between the
latter and the assignee. [Railroad v. Railroad, 135 Mo.
173, 36 S. W. 602; Jones, L. and T., secs. 445, 659.] One
consequence of this privity is that if different parcels of
land are assigned to separate persons, a divisible cove-
nant running with the land will attach upon each parcel
*pro tanto,* and the *assignee* of each will be answerable
for his part of a charge on the land and exclusively lia-
ble for a breach by him of any such covenant. [Astor v.
Miller, 2 Paige Ch. (N. Y.) 68, 78; citing Touchstone,
199 Co. Litt, 385a; Van Horn v. Crain, 1 Paige's R. 455.
See, too, Wollaston v. Hakewill, 3 Mann & Gr. *297;
Van Rensselaer v. Bradley, 3 Denio 135; Ingersoll v.
Sergeant, 1 Whart. (Pa.) 337; Merceron v. Dowson, 5

Barn. & Cress. 479; Stevenson v. Lambard, 2 East. 575.]
Respondent's counsel earnestly insist that when the
Granby Company assented to the subletting to Geer by
the defendant company, Geer became tenant of the for-
mer company. But this is not the law. [See Railroad
v. Railroad, 135 Mo. 172, Jones L. and T., secs. 445, 659;
1 Taylor L. and T. (9 Ed.), sec. 109; 2 Taylor, L. and T.
(9 Ed.), 448.] The defendant still continued to be the
tenant of the Granby Company and answerable to it on
all the covenants of the lease, but plaintiff was not lia-
ble to the Granby Company. [Jackson v. Brownson, 7
Johns. 227; 2 Taylor, L. and T. (9 Ed.), sec. 448.] It
may be that the law is technical in not according the
same rights to and against an under-tenant that obtain
as to an assignee; but the distinction in the rules ap-
plicable to the two has been adhered to immemorially.
An under-tenant cannot be sued on the covenants in the
original lease but may be ousted if they are violated. In
view of this jeopardy, he may protect himself with an
indemnity from his immediate lessor against the conse-
quences of the breach, and has an action for any damage
he sustains thereby. [1 Taylor, L. and T. (9 Ed.), sec.
110; 2 Taylor, L. and T., sec. 738.] In those texts are
found the following remarks, which express the accepted
law:

"A prudent under-lessee will stipulate for the inser-
tion of a clause to protect himself from paying rent till
his lessor produces the superior landlord's receipt for
the chief rent; with a provision, that, if such rent is not
paid when due, the under-lessee may pay it to the super-
ior landlord in discharge of his own rent. He ought
also, when contracting for an under-lease, to inform
himself of the covenants contained in the original lease;
for, if he enters and takes possession of the property, he
will be bound by all such covenants as run with the land.
(And one who enters into an agreement for an under-
lease, without inquiring into the covenants of the orig-

inal lease, will be taken to have constructive notice of all the usual covenants contained in the original lease.)" [1 Taylor, L. and T. (9 Ed.), sec. 110.]

"Where a tenant under-lets the premises, the law implies a duty on his part to indemnify the under-tenant, against all his covenants with the superior landlord; and the under-tenant may have an action on the case against him for any injury he may sustain by reason of any such breach of covenant. But where the under-letting was by deed, not containing a covenant to indemnify against such claims of the head landlord, the undertenant was not allowed to maintain assumpsit against his landlord, for permitting him to be distrained upon for rent due to the head landlord; the lease being by deed, the tenant's remedy, if any, was by an action of covenant upon the implied covenant for quiet enjoyment. But where the demise is not by deed, the proper remedy is by an action on the case, although assumpsit may also lie." [2 Taylor, L. and T. (9 Ed.), sec. 738.]

This question of the right of a landlord to enter on one subtenant for breaches of the first lease by another, was gone into thoroughly in Clark v. Cummings, 5 Barb. (N. Y.) 339, a case in which the facts relevant to the point in hand were like those of the case at bar. The lessee of a farm had sublet moieties of it to two undertenants. The principal lease contained provisions regarding the preservation of a certain portion of the land in timber and against cutting timber thereon save for certain purposes. It was stipulated as a condition that the lessor, or his heirs or assigns might re-enter for breach of these covenants. The sublessees occupied their respective moieties in severalty, paying rent to the original lessor and owner of the premises, who credited the payments generally on the principal lease. The part of the opinion pertinent to the point under advisement is as follows: "Upon this state of facts several ques-

tions arose upon the trial and are now presented for our decision.

"First. Whether, by this severance in the occupation of the premises and in the payment of the rent by the respective occupants, the conditions of the lease have become severed, so that an act which would work a forfeiture of the lease, if committed by a sole tenant, will now work a forfeiture of the share only which is held by the tenant who commits the act. In other words, whether the several tenants are to be treated as separate lessees, each of whom is responsible for his own acts only.

"No authority has been cited which shows that when the covenants and conditions are entire, as they are here, embracing the whole premises conveyed by the lease, and by the very terms of the lease made applicable to them as to one undivided parcel of land, or farm, the mere receiving, from the several occupants, for their convenience, the portion of rent agreed on between the cotenants as the portion of each, will have the effect to work a change in the scope and application of the covenants. If this were so, the intention of the lessor to preserve a given quantity of wood and timber land, and to protect the premises from the destruction of wood and timber on the part so reserved, would be liable to be utterly defeated. On the contrary, we understand the rule to be established otherwise; and that such a consequence does not follow unless the title to the reversion or the right to receive the rents, has been severed, so as to be vested in different persons. [See 3 Kent's Com. 469; 3 Denio 140; 1 Id. 516.] In this particular case, all that could, in view of the case, be inferred against the lessor would be a consent to separate holding and occupancy, by the second tenant, subject, however, to the covenants in the lease. This was expressly so held in Jackson v. Bronson, 7 John. 227. In that case, the lessee assigned the north half of the prem-

ises (by the written consent of the lessor) to one Shaw, who cut off all the timber on his part of the lot. It was there held, however, that the lessee was responsible for any act of his assignee amounting to a breach of the covenants or conditions of the lease. (See opinion of Van Ness, J., on p. 232, citing Cro. Jac. 521; Cro. Car. 188, 580.) We therefore think that if either the defendant or Denton has committed any act which, by the terms of the lease, creates a forfeiture of the estate, the forfeiture attaches to the whole lot originally leased."

On the distinction between the rules applicable to a subletting and those applicable to an assignment, see further, In re Strasburger's Estate, 9 N. Y. Supp. 204; 132 N. Y. 128; Bore v. Coppola, 91 N. Y. Supp. 8; Bruder v. Geisler, 94 N. Y. Supp. 2.

Defendant's counsel contend the forfeiture of the main term was wholly invalid, but go into no particulars and we know not whether they challenge its validity because no right to forfeit existed, or for lack of proper notice, or other infirmity in the declaration of forfeiture. There had been a breach of the stipulation in the original lease for the support of the roof, the pillars in some of the mines having been cut away so as to endanger the lives of workmen and damage the property by causing the roof to cave in spots. The evidence is uniform on this issue of fact, and we have only to determine its legal effect under the provisions of the lease. The stipulation about the pillars was more than a covenant—it was a condition which, if violated, defeated the estate of the Boston Company. Such was the intention of the parties to be gleaned from the evidence and from the terms of the original lease. The testimony is that the officers of the Granby Company considered themselves and their company responsible for damages for any loss of life due to a fall of the roof. Besides, the mines would be destroyed if the roof fell. This was a serious matter and was treated seriously in the contract, the right to de-

clare a forfeiture for a breach of the stipulation being reserved. When the supporting pillars were cut away, the event happened on which the right could be exercised. Forfeitures of mining leaseholds are allowed by the courts with less reluctance, it seems, than is felt in cases of other leaseholds. [18 Am. and Eng. Ency. Law, p. 372; Woodward v. Mitchell, 140 Ind. 406; Munroe v. Armstrong, 96 Pa. St. 307; Allegany Oil Co. v. Bradford Oil Co., 23 N. Y. (Sup.) 26.] To ascertain how the Granby Company was required to proceed in declaring a forfeiture, we must look to the original lease. It provided that on a breach of any condition, the rights and privileges of the Boston Company should, at the option of the Granby Company, be forfeited and revert to the latter; that the Boston Company's license should cease and determine and notice of the forfeiture, served in person on the Boston Company, or sent through the mails addressed to its last known place of business, should be sufficient notice. What the Granby Company did was to mail notices that it had declared the lease forfeited, to the officers of the defendant at its place of business in West Virginia, and at the same time, or a day later, enter on the entire leasehold, including the two lots sublet to plaintiff. Nothing has been said by counsel concerning the sufficiency of the notice and we feel a diffidence in dealing with it unaided by argument or a citation of authorities. No notice for a certain period was required by the lease, which, as it was for ten years, was not subject to sections 4107 and 4108 of the statutes (R. S. 1899) relating to terms not exceeding two years, by will or at sufferance, and requiring ten days' notice prior to re-entry for condition broken. Neither was the lease subject to section 4109 of the statutes, relating to the termination of tenancies from year to year on sixty days' notice given before the end of the year. The present forfeiture was not declared in order to end a term of uncertain duration, but to resume a lease

hold let for a definite period, because of a breach of one
of the conditions on which the lessee was entitled to
hold.  Ten days' prior notice or demand for possession
might have been essential in order for the Granby Com-
pany to regain possession by an unlawful detainer ac-
tion.  But if it could enter peaceably and without action,
it seems no notice was necessary at common law save as
provided in the lease.  [1 McAdam, L. and T., 651; Met-
ropolitan Land Co. v. Manning, 98 Mo. App. 248; Pen-
dil v. Mining Co., 64 Mich. 172.]  In Guffy v. Hukill, 34
W. Va. 49, Munroe v. Armstrong, 96 Pa. St. 307, and
Allegany Oil Co. v. Bradford Oil Co., supra, the forfeit-
ures were worked without any notice, none being re-
quired by the lease, and in two of those cases by the
mere reletting by the original lessor to a new lessee.  The
next question is whether the Granby Company was au-
thorized to enter on the leasehold.  The right to declare
a forfeiture expressly reserved in the lease was equiva-
lent, we think, to a reservation of the right to re-enter.
[Metropolitan Land Co. v. Manning, supra; Messer-
smith v. Messersmith, 22 Mo. 369; Walker v. Engler,
30 Mo. 130; Clark v. Brookfield, 81 Mo. 503; 2 Platt,
Leases, p. 320, et seq., and cases reviewed; 18 Am. and
Eng. Ency. Law, p. 369, par. 3, and cases cited in note 1.]
The text reads:  "The common law rule is well settled
that a breach by the lessee of his covenants or agree-
ments in the lease, does not work a forfeiture of the
term, in the absence of an express stipulation in the
lease, or the reservation of a power of re-entry in case
of such breach."  It has been ruled, where the breach
was not of a mere covenant, but of a condition on which
the estate was held, the lessor might enter without any
express proviso allowing it.  [Doe v. Watt, 1 Mann. &
R. 694; 1 Taylor, L. and T. (9 Ed.), secs. 290, 291.]
Perhaps the rule may be different if the forfeiture is de-
clared for non-payment of rent, and it may be that in
such case a proviso for re-entry and notice or demand

for payment, would be essential in declaring a forfeiture. On the evidence before us we conclude the forfeiture in dispute was validly declared.

The court found plaintiff had "consented to the alleged forfeiture and thereby waived any rights he may have had against the defendant." In a finding of facts the court is required to state the ultimate facts on which the verdict is based. [Grain Co. v. Becker, 76 Mo. App. 375, 379; Clementson, Special Verdicts, p. 83 and cases cited in notes.] The legal conclusion on which the court determined the issue against the plaintiff was that he had waived his rights against defendant, and the fact from which the court found waiver—the fact supposed to prove it—was his consenting to the forfeiture by the Granby Company of defendant's lease. The expression "consented to the forfeiture" is vague and might signify either that plaintiff offered no resistance legal or physical, or that pursuant to an agreement between him and the Granby Company, he agreed to what was done with the intention of abandoning his lease from defendant. The point for decision right here is, what conduct in the nature of consent, would preclude plaintiff from recovering. A secret wish to get rid of his lease would not, in itself, impair his case unless the wish found expression in conduct or words, either tending to show an intention to abandon the lease given by defendant or to estop him from suing for breach of the covenant. Plaintiff's right was to enjoy the leasehold quietly as against disturbance by defendant, or on account of its fault. If he relinquished possession to the Granby Company when he was entitled to hold it, this would amount to a waiver of his right to quiet enjoyment and the covenant sued on was not broken. But if he merely yielded possession in good faith, to the paramount title, asserted for good cause, this was an eviction affording an action on the covenant; for plaintiff was not bound to contest, in or out of court, the Granby Company's

right to enter. Not having contested it, he was put to proof that the Granby Company had the right to enter and he deferred to its right. [Jones, L. and T., sec. 363; 18 Am. and Eng. Ency. Law, p. 695; Tyson v. Chesnut, 118 Ala. 387; Kane v. Mink, 64 Iowa 84; King v. Bird, 148 Mass. 572; Duncklee v. Webber, 151 Mass. 408; Leopold v. Judson, 75 Ill. 536; Hunter v. Reiley, 43 N. J. L. 480; Ogilvie v. Hall, 5 Hill (N. Y.) 52; Bennett v. Bittle, 4 Rawle (Pa.) 339; Briggs v. Thompson, 9 Pa. St. 338; Morrison v. Chadwick, 7 C. B. 266.] It is true as defendant's counsel argue, that the lessor does not covenant against the tortious acts of strangers to the title; but he does covenant against himself and those claiming under him, or, by paramount title, over him. [Taylor, sec. 305.] It follows that the mere yielding of possession by plaintiff does not bar his action. On the other hand, if he participated in causing or facilitating the forfeiture, in order to get rid of his lease or for other supposed advantage to himself, instead of out of deference to the paramount title, this is a defense, for he was a party to his eviction. The effect of the opinion in Updike v. St. Louis, 94 Mo. 234, 6 S. W. 689, is that by abandoning the premises *to one not entitled to them* (italics ours) a lessee may be estopped to sue on his lease. It looks like estoppel was used in said opinion in the sense of waiver. Be that as it may, the Granby Company appears on the present record to have been entitled to possession; and there is no proof that plaintiff's conduct was in prejudice of defendant's rights or induced defendant to take any action. Hence an estoppel cannot be raised against plaintiff. The question is as to his purpose in yielding possession as shown by what was said and done. The testimony to show the operation of the mines under the old lease entailed loss, was of slight weight in proving plaintiff yielded the premises in order to get another from the Granby Company on the same terms, as defendant argues; but is of great weight

on the question of the damages suffered.from his eviction. The court's finding that plaintiff consented to the forfeiture does not amount to a finding that he participated in it. Mere consent would not necessarily waive his right to quiet enjoyment. Such complicity on his part as proves an intention to get rid of his obligations as lessee, is essential. In at least one instruction (No. 4) requested by plaintiff, the facts on which plaintiff would be entitled to recover, were set forth. This instruction having been refused and the facts not having been properly found, the judgment must be reversed and the cause remanded. All concur.