## CLINTON COTTON MILLS v. UNITED STATES.

No. 5623.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1947.

R. E. Babb and Ralph T. Wilson, both of Laurens, S. C. (H. S. Blackwell, of Laurens, S. C., on the brief), for appellant.

Oscar H. Doyle, U. S. Atty., of Anderson, S. C. (Walter H. Hood, Asst. U. S. Atty., of Anderson, S. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This is an appeal from a conviction under 50 U.S.C.A.Appendix, § 530, which provides that it shall be a misdemeanor to knowingly take part, or to attempt to do so, in the eviction of the wife, children, or other dependents of a person in military service from any premises occupied chiefly for dwelling purposes, the agreed rent for which does not exceed $80 per month, except upon leave of court granted upon application therefor or granted in any proceeding or action affecting the right of possession. The benefits of this section are extended to persons ordered to report for military service by 50 U.S.C.A.Appendix, § 516. The information filed against the defendant contained two counts: the first charged that the defendant had knowingly evicted the wife and four children of Charles Thomas, who had been ordered to report for induction, from their dwelling house on March 14, 1945; the second count charged that the defendant had knowingly evicted the same Mrs. Thomas and her children from another dwelling house on July 12, 1946. The defendant waived its right to a jury trial, and the case was tried before the District Judge who found the defendant guilty on both counts and imposed a fine of $1,000 on each. The sole contention raised by the defendant on this appeal is that the evidence was insufficient to warrant a conviction on either count.

With respect to the first count, the record discloses the following evidence. The defendant operates a cotton mill in Clinton, South Carolina, and owns a number of houses in Clinton which it rents to its employees. It is the policy of the company

to reserve its houses for its employees, and to recover possession, by eviction if necessary, when the occupants cease to be employees. Charles Thomas had worked for the defendant for some years and, with his wife and four children, occupied a company house which was rented to the Thomases for $3 a week. Thomas registered and was found fit for military service and received an order to report for induction on March 21, 1945. He informed his immediate supervisor at the mill of this fact and also told him he might not come in for work every day thereafter as he wanted to spend some time with his family. He was advised that this would be satisfactory, but as he was going to work on the following Friday, he met Mayfield, the boss weaver, and was told that he had been discharged. At the same time Mayfield demanded that Thomas move out of the house rented to him by the defendant. On the next Monday J. A. Davis, the defendant's outside supervisor of houses, came to Thomas' home and told him and his wife that they would have to move. Thomas remonstrated but Davis told him that they would have to move or the defendant would serve ejectment papers on them. Thomas then attempted to find another place for his family to live during his absence, but his efforts were not successful. Davis returned to the Thomas house on frequent occasions and each time he reiterated that they would have to leave. Finally Thomas made arrangements to move his family into the house of his mother-in-law, which was also owned by the defendant. The latter was a three-room house occupied by his mother-in-law and her son, and Thomas was reluctant to move his family there since he felt that the house was not large enough to accommodate them all. On March 14, 1945, Davis arrived at Thomas' home with a truck owned by the defendant and several helpers. Thomas was not at home at the time. Davis told Mrs. Thomas that he had come to move her and proceeded to place all the furniture on the truck despite her protests. Mrs. Thomas finally took her youngest child and walked to her mother's house where her furniture was delivered by the truck.

Davis testified that he had been instructed by the defendant's officials to move the Thomases after Thomas was fired, and that P. S. Bailey, vice president of the defendant, had told him that the houses were maintained for mill help and not for soldiers' families. He corroborated the testimony of the Thomases as to his insistence that they leave, their unwillingness to do so, and the moving of their furniture on the 14th over Mrs. Thomas' protests.

The mere recital of this testimony demonstrates beyond question that there was sufficient evidence to justify the verdict of guilty on the first count. Indeed it is difficult to conceive a clearer case of eviction. It is true that the testimony outlined above was contradicted in certain respects by witnesses for the defendant, notably as to Davis' authority and the orders given him to evict the Thomases, but it is scarcely necessary to point out that such questions are for the trial judge and not for this court. The District Judge believed the testimony of Davis and of the Thomases, and hence it is manifest that the conviction on the first count must be sustained.

The evidence as to the second count was substantially as follows: Mrs. Thomas and her children lived with her mother from March 14, 1945 to January 9, 1946. After the termination of hostilities Mrs. Thomas was requested to leave by her mother and consequently did not wish to remain there, especially as the house was very crowded. One of Mrs. Thomas' brothers had been discharged from the Army in October, 1945, and was also living with his mother, so that there were eight persons living in a three-room house. Thomas returned home on a furlough in December and he and Mrs. Thomas searched unsuccessfully for a place to rent. Thomas also asked several officials of the defendant to help him, but they declined to do so. Mrs. Thomas had saved approximately $100 while Thomas was in the Army, and finally Thomas purchased a home for his family two miles outside of Clinton and made the down payment from the money that had been saved. Mrs. Thomas and her children moved into this house on January 9, 1946, but she was unable to meet the monthly payment and was forced to move out again on February 8, 1946. On this latter date she moved into a four-room house already occupied by one Roy Ramsey

and two other persons. Ramsey worked for the company and rented his house from it. Mrs. Thomas neither asked nor received permission from the defendant to move into Ramsey's house, and she paid no rent to the defendant while she was there. She did, however, pay some money to Ramsey.

Mrs. Thomas had been working in the mills and she continued to do so while she lived at Ramsey's. However, she became pregnant and around the first of July she felt she was unable to work any longer. Accordingly, she went to see Roy Holtzclaw, the defendant's boss spinner, and told him that she would be unable to continue work unless he transferred her to another shift during a cooler portion of the day. Holtzclaw refused to do this. He informed her that she must work in the daytime or not at all, and that if she stopped working, she would have to move out of Ramsey's house or Ramsey himself would be discharged and compelled to leave the premises. Holtzclaw also stated that he had given Ramsey the same warning. An order to get Ramsey out of the house was signed by the superintendent of the mill about this time, but the order was not executed because Mrs. Thomas did not wish to cause Ramsey's discharge and, after a conversation with him, left his house. Holtzclaw was a member of the general staff of the mill which held bi-weekly meetings to consider and determine the policies of the business and decide housing questions as they arose.

■ The statute under which defendant is charged contemplates a landlord-tenant relationship, as is indicated by the use of the terms "agreed rent," "eviction," and "distress," all of which have reference to such a relation. Arkless v. Kilstein, D.C.E. D.Pa., 61 F.Supp. 886; Pfeiffer v. McGarvey, D.C.E.D.Pa., 61 F.Supp. 570; Lesher v. Louisville Gas & Electric Co., D.C.W.D. Ky., 49 F.Supp. 88. The company contends that there was no such relationship between it and Mrs. Thomas, and that therefore it should have been acquitted on the second count. It is said that Ramsey was the company's tenant in possession of the house and that the company had no part in the sub-tenancy between him and Mrs. Thomas, and further that the company did not evict her.

Indeed it is said that she was not evicted at all but left the house voluntarily when the company threatened to evict Ramsey if she did not leave.

■ This defense, however, is not sufficient to overcome the effect of Mrs. Thomas' testimony when the company's control of its employees and of the houses furnished them is taken into account. If her testimony is believed, it cannot be said that she left voluntarily for she left only when Holtzclaw commanded her to leave and threatened Ramsey with eviction if she did not comply. We think that this action was tantamount to an eviction within the meaning of the statute. Generally, a tenant can be evicted only by his landlord, but this is not true when a tenant is deprived of possession by one who has title paramount to the tenant's immediate landlord, as where a sub-tenant is compelled to surrender possession by the owner of leased premises after forfeiture or surrender of the lease. Holbrook v. Young, 108 Mass. 83; Geer v. Boston Little Circle Zinc Co., 126 Mo.App. 173, 103 S.W. 151; Home Life Ins. Co. v. Sherman, 46 N.Y. 370; Hyman v. Boston Chair Mfg. Co., 58 N.Y.Super.Ct. 282, 26 Jones & S. 282, 11 N.Y.S. 52. Matters had not gone so far as an actual ejection when Mrs. Thomas left, but there was good reason for her to believe, having in mind her previous experience, that not only she but Ramsey would be forced out if she did not move. This compulsion amounted to an eviction for it is decided that one who yields to a hostile assertion of paramount title by one entitled to present possession has suffered an eviction. Tyson v. Chestnut, 118 Ala. 387, 24 So. 73; Hamilton v. Cutts, 4 Mass. 349, 3 Am.Dec. 222; Marsh v. Butterworth, 4 Mich. 575; Merryman v. Bourne, 9 Wall. 592, 19 L.Ed. 683; Home Life Ins. Co. v. Sherman, supra; Tiffany, Landlord and Tenant, (1912), §§ 184-186. The evidence indicates that the employees were tenants at will, and that the company had the power to discharge them and cause them to leave the company's houses at any time. The technical legal right of the company to take such action, except insofar as it was forbidden by the statute upon which the information was based, is not questioned. Under these circumstances the departure

of Mrs. Thomas before she was forcibly ejected presents no defense to the charge of eviction.

There is additional ground on which the conviction on the second count may be affirmed. Ramsey was the landlord of Mrs. Thomas and if he had evicted her he would have been guilty of an offense within the meaning of the statute. The evidence does not show that he compelled her to leave; but there is evidence tending to show that the company endeavored to coerce him to do so. One who commands or procures a crime to be committed, is guilty himself as a principal, and therefore if Ramsey had yielded to the pressure exerted upon him by the defendant, and had evicted Mrs. Thomas, the defendant would have been guilty of the crime of eviction; and even though the company failed in its purpose, it was at least guilty of the attempt. This is sufficient to sustain the verdict of guilty because the statute forbids not only an eviction but also an attempted eviction. While the defendant was charged with an eviction and not with an attempt, this fact does not preclude a conviction for the attempt, since Rule 31(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, provides that the defendant may be found guilty of an offense necessarily included in the offense charged, or of an attempt to commit either the offense charged or an offense necessarily included therein, if the attempt is an offense.

Affirmed.